# DAVIDOFF HUTCHER & CITRON LLP

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

**FIRM OFFICES**

WHITE PLAINS
ATTORNEYS AT LAW
120 BLOOMINGDALE ROAD
WHITE PLAINS, NY 10605
(914) 381-7400

WEST PALM BEACH
ATTORNEYS AT LAW
1107 NORTH OLIVE AVENUE
WEST PALM BEACH, FL 33401
(561) 567-8488

WRITER'S DIRECT: (646) 428-3238
E-MAIL: rjc@dhclegal.com

> Redactions approved.
> Docket and file in 21-MC-425.
> So ordered.
>     5/17/2021
>
> */s/ J. Paul Oetken*
> J. PAUL OETKEN
> United States District Judge

May 12, 2021

**VIA EMAIL**
The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

21 MC 425

~~CONFIDENTIAL AND FILED~~
~~UNDER SEAL~~

Re:  In re Search Warrant dated April 21, 2021, 21 Mag. 4335
     In re Search Warrant dated November 4, 2019, 19 Mag. 10364

Dear Judge Oetken:

Counsel for Rudolph Giuliani ("Giuliani") is responding to the Government's request for the appointment of a Special Master to conduct the filter review of potentially privileged materials seized pursuant to the above-captioned warrants.

We initially raise our serious concern over the broad and sweeping nature of the searches executed on an attorney's home and law office, and the covert search and review of the same attorney's iCloud account in 2019, and then, the failure to give notice to Giuliani and his clients, and withholding information about that search for 18 months. During that period the government unilaterally reviewed all the information, privileged and not, and made entirely uninformed decisions about privilege (without any input from the clients or their counsel). This was during a period when the President was under investigation by that very office and the Justice Department of which they are an integral part.

Before any further review (including by a Special Master) and any further damage is done to the public's confidence in the confidentiality of their communications with counsel, the issue of the constitutionality and legality of the government's conduct to this point in the investigation must be resolved.

The validity of the 2019 covert warrant, and the handling of the information obtained by the prosecutor are serious questions that must be resolved before any further damage is done.

922068.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 2

Moreover, the fruits of that 2019 search were certainly used in some part to secure the 2021 largely duplicative search warrant and subsequent seizures. It is for those reasons that it is premature to consider a special master before these critical issues are resolved.

In April 2018, the Government was in this exact same position it is in now in dealing with seizures made from the personal attorney to the President. This is now the second dawn raid of the office and home of an attorney for then President Trump. A year before they searched Giuliani's iCloud account in November 2019, they were dealing with the raid of Michael Cohen's home and law office. In *Cohen v. United States,* 18-mj-3161 (KMW), after conducting a search of President Trump's personal lawyer's home and law office, the Government opposed the appointment of a Special Master in a letter to the Court dated April 18, 2018. Counsel for Michael Cohen and intervening counsel for President Trump both requested that a Special Master be appointed and that the Special Master review the evidence, but only after counsel for the respective parties had reviewed the evidence and made their own claims of privilege. On the day of a scheduled conference to decide the issue, the Government, in a letter to Judge Wood, withdrew their opposition to the Special Master, but requested that the Special Master, and not defense counsel, review all the evidence and make the initial determinations of privilege. Judge Wood adopted the compromise and appointed a Special Master to review all materials. One of the Government's counsel that signed that letter is counsel on this matter as well.

As a result, the Government was well aware that it had agreed to a Special Master in a case involving claims of attorney-client and executive privilege regarding the search and seizure of an attorney's home and office when that attorney was the personal attorney for the President of the United States. Here, when faced with the exact same situation in November 2019, the Government decided on its own, to use its own Taint Team to sift through all of the evidence gathered and decide what materials were privileged. To make matters worse, not only was Giuliani not informed about this practice, but the Government also continued to keep him, the President and his counsel in the dark for 18 months while Giuliani cooperated with another office of the United States Attorney. Based on its experience in the *Cohen* case, the Government knew better, or should have known better, that it should not make unilateral, uninformed secret decisions about privilege, but clearly threw caution to the wind in its attempt in this investigation in search of a crime.

Accordingly, we ask the Court to consider the following:

1. We request that the Court unseal the affidavits in support of the search warrant issued by this Court on November 4, 2019 for the iCloud account of Giuliani, as well as the affidavits in support of the warrants issued on April 21, 2021 for Giuliani's home and law office. Review of those affidavits is necessary in order for counsel to make informed decisions about bringing a motion to suppress and return all of the material seized in 2019 from the iCloud account of this attorney as well as the material subsequently seized in the more recent search warrants executed on April 28, 2021.

922068.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 3

2. In addition, in the original warrant for the iCloud account, there is a non-disclosure order based upon an allegation made to the issuing Court, that if Giuliani were informed of the existence of the warrant, he might destroy evidence or intimidate witnesses. Such an allegation, on its face, strains credulity. It is not only false, but extremely damaging to Giuliani's reputation. It is not supported by any credible facts and is contradicted by Giuliani's efforts to provide information to the Government. We should be allowed to question the Government as to what basis it had, if any, to make that assertion. Accordingly, we request the information that was presented in the iCloud warrant to justify the Non-Notification Order pursuant to 18 U.S.C. Section 2705 (b) that "there is reason to believe that notification of the existence of this warrant will result in destruction of or tampering with evidence, and/or tamping (sic) with potential witnesses, or otherwise will seriously jeopardize an ongoing investigation." We also request access to the application for any extension of the non-disclosure provision which originally lasted for a year.

3. We request that this Court grant access to the material gathered in 2019, which was reviewed by the Government's secret "Taint Team" and determined by them, without judicial supervision, to be non-privileged, responsive and relevant. After our review, we expect to be able to expand our argument that this unilateral, secret review was illegal and should be deterred in the future by suppression of any evidence considered, and also any information obtained as fruit of this poisoned tree.

**PRELIMINARY STATEMENT**

This application is the result of the recent search of the President's personal attorney's home and law office and the seizure of electronic devices and information contained therein during the time period ████████████████████████████, as well as an earlier covert warrant in November 2019 for Giuliani's iCloud account for the period ████████████████████████████ ████ This is the second time this prosecutor's office has conducted a search of the office and home of an attorney for President Trump. The search of an attorney's office should be done rarely and only under extraordinary circumstances. Otherwise, such high profile and heavily publicized searches such as those of President Trump's attorneys will just continue to erode and finally extinguish citizen reliance that communications for legal advice are really seriously protected.

As a result of these search warrants, the Government is now in possession of Giuliani's electronically stored information ("ESI") from ████████████████████████████ During this period, as the Government was aware, Giuliani was acting as the President's attorney, as well as representing others, some of whom were being investigated by the Southern District of New York ("SDNY"). Giuliani is a well-known lawyer in New York and nationally. Giuliani is a former Assistant United States Attorney in the SDNY; a former Associate Attorney General of the United

922068.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 4

States; the United States Attorney for the SDNY and the Mayor of the City of New York. Furthermore, during the time under search, Giuliani was the attorney for the President of the United States.

These seizures were not only unnecessary but also constituted a monumental, and heavily publicized, breach of the attorney-client privilege, the Executive privilege, and the guidelines in the United States Attorney's Manual which attempts to protect the viability of the attorney-client privilege. It was premature and unwarranted for the Government to seize Giuliani's ESI because Giuliani had already cooperated with the U S State Department ("State") through Mike Pompeo, the Secretary of State, in March 2019 concerning Ukraine. He also cooperated again in July and August of 2019 at the request of the State Department in assisting them with regard to Ukraine. In fact, there has never been an occasion where Mr. Giuliani has refused to cooperate with, or give assistance, to his government. This was as true during the Clinton administration as it was during the Bush administration.

As early as November 4, 2019 (ironically the day the SDNY sought the covert warrant of Giuliani's iCloud account) counsel informed the SDNY that Giuliani would answer any questions (without restrictions), except for privileged matters, as long as Giuliani's counsel was informed of the subject matter to be discussed. However, the SDNY refused to tell Giuliani's counsel any of the subjects of concern. Assuming that the objective was a search for the truth, rather than simply to trash a well-respected attorney's reputation particularly as an attorney for President Trump, the SDNY could have accepted the offer and just repeated what had already been leaked to the media by "sources close to the investigation."

If the SDNY was leery of that for unknown reason, or they were concerned that evidence would disappear or be altered or witnesses intimidated, they could have, and indeed should have, given counsel a subpoena duces tecum for the materials they subsequently felt the need to seize a year and a half later.

Unfortunately for Giuliani, and even more unfortunately for the attorney-client privilege and executive deliberation privilege, and the public's perception that those privileges are real, the SDNY simply chose to treat a distinguished lawyer as if he was the head of a drug cartel or a terrorist, in order to create maximum prejudicial coverage of both Giuliani, and his most well-known client – the former President of the United States.

**STATEMENT OF FACTS**

On Wednesday, April 28, 2021 at 6:30 a.m., agents of the Federal Bureau of Investigation ("FBI") simultaneously executed search warrants at the home and law office of former Mayor Rudy Giuliani. The search warrants called for the agents to seize "all electronic devices." The search was carried out without incident, except that the agents at Giuliani's apartment declined to take two external hard drives which both Giuliani and his counsel represented to be copies of

922068.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 5

Hunter Biden's hard drive. The declination to seize those external hard drives without inspection came despite that the warrant called for the seizure of *all* electronic devices. The only basis for the agents to conclude that those external hard drives contained only Hunter Biden's hard drive was the word of Rudolph Giuliani, the same person the Government alleged might tamper with or destroy evidence and intimidate witnesses.

Two days after that search, representatives of the U.S. Attorney's office, (hereinafter "SDNY" or "Government") informed Giuliani's counsel, for the first time, that a year and a half earlier, on November 4, 2019, the SDNY secured a "covert warrant" (their term), to search Giuliani's iCloud account. The search of the iCloud account was limited to the time between ███████████ ███ ██ ████████ ██ ███ ██████ ██████ ███████ ██ Not coincidentally, the time period covered by this warrant commences when Mayor Giuliani began to represent President Donald J. Trump.

Following the November 2020 Presidential election, after having afforded themselves a year and a half to analyze in secret the sensitive information from the iCloud account, the Government sought the Justice Department's permission to retrieve Giuliani's electronic devices. It was largely a "do-over' because it to covered virtually the same period covered by their covert, illegally conducted and maintained invasion of Giuliani's iCloud account without any notice for that year and a half. That request was DENIED. Undeterred, in January 2021, the SDNY went back to the Department of Justice seeking permission to obtain a search warrant for Mayor Giuliani's electronic devices. That request was also DENIED.

After two failed attempts, the SDNY learned its lesson. Now, they waited until the Biden Administration was in office and more particularly, senior members of the Justice Department had been removed and replaced by Biden appointees. The SDNY went back to the Department of Justice for its third attempt to seek permission to seek their "do-over" application for a search warrant and this time they were apparently successful, for they then approached this Court seeking warrants to search Mayor Giuliani's apartment and law office. It is unknown if the Government informed the Court of Giuliani's cooperation with the State Department or his offers to cooperate with the SDNY or his actual cooperation with the Western District of Pennsylvania.

It is unknown what additional claims, if any, the SDNY may have made in its third attempt to secure permission from the Department of Justice. It is also unknown whether the SDNY informed this Court of the two previous denials by the Department of Justice. Also important is the very salient fact that the two failed efforts to search Mayor Giuliani's electronic devices were widely reported in the media at the time. Despite these two warnings that the SDNY was seeking permission to apply for a search warrant for his electronic devices and because he had no guilty conscience, Giuliani took no steps to destroy evidence or wipe the electronic devices clean. Since Giuliani was not under subpoena, he had no legal obligation to preserve that evidence, but he did so because he is an innocent man who did nothing wrong.

922068.v1

**DAVIDOFF HUTCHER & CITRON LLP**

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 6

      As a reminder, this same attorney had cooperated with the State Department and offered, for a year and a half, to answer any questions from the SDNY about any subject or crime, with no limitations except for privileged matters. During that same time period, Giuliani did in fact cooperate with Main Justice, through their designee in Pittsburgh on the subject of the Ukraine. Amazingly, the SDNY continually turned down the offer by stating that while they would be happy to hear anything Mayor Giuliani's counsel had to say, they refused to identify the subject, although those subjects were disclosed to the media. There was no downside risk to the SDNY, but apparently, they were not interested in quickly getting to the truth of whatever situation was confusing or motivating them. Meanwhile, Mayor Giuliani's character and reputation was being attacked in the media by repeated leaks from "sources close to the investigation." Giuliani's offer to cooperate with the SDNY and give them anything they asked for was so open and notorious that Giuliani's counsel made a statement saying exactly that on national television on November 25, 2019. ("All the SDNY had to do was ask us and we would have given them whatever they wanted…")(Exhibit 1 attached).

      Indeed, throughout this entire time period, Giuliani has been nothing but cooperative with the Government. Giuliani cooperated about matters involving the Ukraine, initially with the State Department in March of 2019 by delivering information and documents on the Ukraine directly to Secretary of State Mike Pompeo. Later, in January of 2020, Giuliani cooperated on Ukrainian matters directly with Main Justice's designee, the United States Attorney and the Special Agent in Charge ("SAIC") of the FBI for the Western District of Pennsylvania, located in Pittsburgh.

      The SDNY likely knew, but may not have informed the Court, that Giuliani had cooperated with the State Department in March of 2019 concerning the Ukraine and that in January 2020, counsel for Giuliani contacted high officials in the Justice Department, to inform them that Giuliani wanted to provide evidence for their consideration about the Ukraine. Within a day, the United States Attorney for the Western District of Pennsylvania, Scott W. Brady, contacted Giuliani's counsel and offered to hold a meeting in Pittsburgh with both the United States Attorney's office personnel and the FBI. Mayor Giuliani immediately accepted, and a meeting was scheduled for January 29, 2020.

      On January 29, 2020, Mayor Giuliani and his counsel, flew to Pittsburgh at their own cost, where they were met by agents of the FBI and transported to FBI headquarters in Pittsburgh. Present at that meeting were the United States Attorney, the First Assistant United States Attorney, the Chief of the Criminal Division, and two additional Assistant United States Attorneys ("AUSA's") from the Western District of Pennsylvania. The FBI was represented by the Special Agent in Charge ("SAIC") of the Pittsburgh FBI, the Assistant Special Agent in Charge ("ASAIC"), and three other special agents of the FBI.

      Prior to the meeting, Giuliani's counsel had provided the Pittsburgh United States Attorney's office with documents and an extensive outline of the subject matter to be discussed, so that the Government could be fully informed and prepared to ask probing questions. Giuliani began the meeting by making a presentation with handouts. During his presentation, and at the end

922068.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 7

of it, the Mayor and his counsel answered every question they were asked, to the apparent satisfaction of all of the Government officials in the room. In addition to the presentation, Giuliani provided the Government with the names and addresses of individual witnesses, both in the United States and in Ukraine, that could corroborate and amplify the information that the Mayor was providing. Subsequent to that meeting, and covering a period of months, counsel for Giuliani received a number of inquiries, discussions and requests from the First Assistant United States Attorney. All requests were granted and all inquiries were answered. At no point did Mayor Giuliani or his counsel refuse any request that was made. This of course, was all done without any knowledge that the Justice Department had secretly been monitoring Giuliani's iCloud account. In light of that extensive history of full actual cooperation and repeated offers to do the same for the SDNY, the allegation that he would destroy documents is absurd.

Prior to Giuliani's cooperation with the Pittsburgh US Attorney, Giuliani's counsel was in contact with the Public Corruption Unit of the SDNY with regard to other matters. Giuliani's counsel interacted with the same AUSA's that are now involved on the Giuliani matter. Not once, during this two-year period, was Giuliani's counsel asked a single question concerning the Mayor; not once was Giuliani's counsel given a subpoena for the Mayor or anyone working with, or for, the Mayor. Nevertheless, on March 2, 2021, while discussing another client's case, the Mayor's counsel wrote to AUSA Nicolas Roos on Giuliani's behalf, again offering to answer any questions the Government might have about any subject, crime, past crime, attempted crime or conspiracy. All that counsel requested was for the US Attorney to identify the subject matter. That request was met, exactly like prior requests, with the refrain that the office would be willing to listen to anything counsel had to say but would not identify the subject matter. Again, all of this took place without Mayor Giuliani or his counsel having any idea that a year and a half prior, the Giuliani iCloud was the subject of a warrant. Giuliani and his counsel were both aware, because of the prominent leaks to the media, of the failed attempts in November of 2020 and again in January of 2021, to gain the required Justice Department permission to search a lawyer's office and residence. If Giuliani was inclined, there was ample notice and time to destroy evidence. Instead, Giuliani continued to offer cooperation.

Given that the United States Attorney's Manual requires that the Government seek the least intrusive way to obtain evidence from a lawyer, it is simply inexplicable why the US Attorney's office did not either accept the cooperation offered to the Government and materials provided to the Western District of Pennsylvania, or issue a subpoena duces tecum for the same material sought in the subsequent search warrants. Instead of taking the ethical and responsible path to ensure the preservation of the attorney-client privilege and the executive privilege, the Government chose the most injurious route. We are now faced with a situation in which, over a year and a half ago, a one-sided "Taint Team" already reviewed attorney-client privileged materials and possibly executive privilege materials, with no oversight by the judicial branch, and has turned over certain unknown materials to the "Case team."

Having already had their "Taint Team" review 95% of the seized material and their "Case Team" review an undisclosed percentage of the material in secret ████████

922068.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 8

▇, the Government now seeks a Special Master to review those very same materials, as well as information from a short additional time period from ▇▇▇ ▇▇▇    The Government intentionally circumvented this protocol by use of the covert warrant and it is likely the sole reason why the Government chose to obtain this information by use of a covert warrant in the first instance.

The most recent search warrants seek the same evidence from the same time period, with the addition of 56 days at the end ▇▇▇▇▇▇. The iCloud warrant sought everything from ▇▇▇ (the commencement of Giuliani's representation of former President Trump) ▇▇▇▇▇▇. The current search warrants of Giuliani's home and office began on ▇▇▇, three months later than the iCloud account, but extend to ▇▇▇▇ Thus, we are dealing with much of the same information already reviewed by the Government from the iCloud account. Where crucial constitutional rights deriving from the Fourth, Sixth and Fourteenth Amendment are implicated, "do-overs" are not allowed.

### A. Government's Letter

The Government filed a letter with this Court proposing certain redactions to that letter for the public record and setting forth the Government's proposal for their review of information contained on all of the electronic devices seized from Giuliani's home and law office. We did not oppose the redactions and this Court has already approved them. Absent from the Governments letter was any discussion of the iCloud search, which was conducted without judicial supervision or the assertion of privilege by counsel. Before we can properly address the Government's letter, it is necessary to determine what steps we might take if the Government has presented inaccurate or incomplete information to both Main Justice and to this Court in order to secure the search warrants. If the Court decides that you must address the Special Master issue we believe the Government should bear the cost as the Special Master will be reviewing most of the same material that the Government's self-appointed Taint Team has already surreptitiously reviewed. However, as discussed, before the appointment of a Special Master is considered, Giuliani is entitled to review the materials reviewed and provided to the "Case Team" pursuant to the November 2019 seizure. Such a review is necessary to determine the full scope of the breach of the attorney-client or executive privilege that led to the Government obtaining permission to execute the instant search warrants.

We further wish to provide the Court with legal arguments in support of several issues of concern that have been raised above.

922068.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 9

## ARGUMENT

### A. Limited Unsealing of Affidavits

We seek limited unsealing to the extent of disclosure to Giuliani of the affidavits supporting both the November 4, 2019 covert warrant to search Giuliani's iCloud account, as well as the April 21, 2021 warrants to search Giuliani's home and law office.

The decision to seal a search warrant affidavit, in the first instance, lies within the discretion of the court. *See In re Newsday, Inc.,* 895 F.2d 74, 79 (2d Cir.), *cert. denied,* 498 U.S. 892 (1990); *Matter of Searches of Semtex Indus. Corp.,* 876 F. Supp. 426, 429 (E.D.N.Y. 1995). The court, however, is obligated to entertain pre-indictment requests for access to sealed warrant documents. *See Newsday,* 895 F.2d at 79; *Semtex,* 876 F. Supp. at 429. *In Search Warrant Executed Feb. 1, 1995,* No. M 18-65 (RJW), 1995 WL 406276, at *3 (S.D.N.Y. July 7, 1995). Such requests for access may be made by the subject of the warrant, the press, and other third parties. Courts have considered arguments under the First Amendment, common law[1], and Rules 41(e) and (g), Fed. R. Crim. P., to unseal warrant applications "during the pre-indictment stage of an ongoing criminal investigation." *See In Search Warrant Executed Feb. 1, 1995*, No. M 18-65 (RJW), 1995 WL 406276, at *3 (S.D.N.Y. July 7, 1995).

Once a request for access to inspect sealed documents is made, that request must be heard by the Court. *See Newsday, supra. Matter of Searches of Semtex Indus. Corp.,* 876 F. Supp. 426, 429 (E.D.N.Y. 1995). While a court may deny access when sealing is "narrowly tailored to preserve higher values," the reasons supporting a court's denial should be set forth with specificity to permit appellate review. *Id.*

Courts have recognized that if a Grand Jury fails to indict an individual within a reasonable period of time, courts should unseal search warrant applications. *See Semtex,* 876 F. Supp. at 429. As the *Semtex* court has noted, "disclosure should not be postponed indefinitely." *Id.* Moreover, a court should consider whether any concerns – which support maintaining such documents under seal – could be allayed by redactions, without the need to deny access to the affidavits in their entirety.

Addressing the right of access to sealed warrant documents, the Second Circuit affirmed an order of the United States District Court for the Eastern District of New York releasing a redacted copy of a search warrant affidavit. *See Newsday,* 895 F.2d at 74. At minimum, the prosecutor should be required to demonstrate that there exists a continuing need to maintain the warrant applications under seal. *See In Search Warrant Executed Feb. 1, 1995*, No. M 18-65 (RJW), 1995 WL 406276, at *3 (S.D.N.Y. July 7, 1995). Under the circumstances of the publicity the government has allowed to be generated by doing nothing about the continuous leaking, it would be hypocritical for the government to make such an argument. If they do make such an

---

[1] The Supreme Court has articulated a qualified right of access to judicial documents that is born from the common law. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597-99 (1978).

922068.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 10

argument, providing access with a non-disclosure order from the court would cover any real problem.

Giuliani is the subject of these warrants. One who challenges a search warrant has a Fourth Amendment right to access search warrant application materials. *United States v. Pirk*, 282 F. Supp. 3d 585, 592 (W.D.N.Y. 2017). Giuliani should be granted access to the sealed affidavits supporting the warrant filed in 2019. More than 18 months have elapsed during which Giuliani was denied knowledge of the existence of this warrant and the seizure of his property.  With respect to the warrant for the seizure of documents of the attorney to a sitting President, the prosecutors surely put the cart before the horse. They chose to bypass a Special Master to review what they knew would contain privileged material, and chose, instead, to move forward with a Taint Team (comprised of federal prosecutors who have already disclosed material to the Case Team), without affording Giuliani, the President, or any of Giuliani's other clients an opportunity to assert privileges. Moreover, they have actively engaged with Giuliani without disclosing the existence of this warrant. During all this time, no indictment has issued. Without a doubt, Giuliani is surely entitled to the affidavits underlying the warrant at this juncture.

Another reason Giuliani should be entitled to review the Government's application is the possibility that information seized in secret and kept secret from Giuliani for a year and a half was leaked to the House Impeachment Committee. On or about December 3, 2019 Representative Adam Schiff, whose counsel was a former member of the Public Corruption Unit of the SDNY, revealed detailed phone records of Giuliani including calls to the White House. (The article is in The Hill entitled "Phone Records Detail Extent Of Giuliani, White House Contacts." [Brett Samuels &Morgan Chalfant, Dec. 3, 2019]).  The article attempts to create suspicion by describing "frequent contact between President Trump's personal attorney and the Office of Management and Budget…" It puts emphasis on a 14 minute conversation with the Office of Management and texts exchanged with an "unspecified" White House number. It is very possible that many of these calls and texts were between Giuliani and his son Andrew, who worked in the White House on entirely unrelated subjects.

More importantly is how did Representative Schiff get these rather extensive phone call and text messages of Giuliani who never received notice of any Congressional subpoena. There has never been an explanation as to the source of Schiff's records.

Likewise, Giuliani's request to inspect the affidavits underlying the warrants to seize electronic devices and the information contained therein from Mr. Giuliani's home and office executed April 28, 2021, should also be granted unless the Government demonstrates that there is some particular need for secrecy that overrides Giuliani's Fourth Amendment rights as the subject of the warrants to know what information is relied upon for these intrusions.

Giuliani's right to inspect the sealed affidavits is also predicated on his right as the subject of the warrant under Rule 41(g) to seek the return of the seized property. Rule 41(e) and (g) provide for pre-indictment adjudication of the legality of a seizure. *Matter of Searches of*

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 11

*Semtex* at 431; *See Roberts v. United States,* 656 F. Supp. 929 (S.D.N.Y.1987), *reversed on other grounds,* 852 F.2d 571 (2d Cir.1988), *cert. denied,* 488 U.S. 993, 109 S. Ct. 556, 102 L.Ed.2d 583 (1988) (stating that the rule says nothing about prudential considerations or irreparable harm); *see also Application of First United Financial Corp.,* 620 F. Supp. 1450 (E.D.N.Y.1985). Pursuant to this approach, if a court finds that the seizure is violative of Fourth Amendment protections, "the evidence must be returned and suppressed." *Roberts, supra* at 932.

The privilege issues related to the seizure of the electronic information of an attorney to the President weigh strongly in favor of adjudicating the legality of these seizures at this stage. Accordingly, unless the Government can demonstrate a need for secrecy, about a case that has been continuously leaked to the media, these affidavits should be disclosed to Mr. Giuliani as soon as possible.

### B. The Use of A Filter Team to Review the 2019 Search Warrant Materials Was Improper.

We object to the Government's seizure of privileged material in response to search warrants executed in April 2021 and November 2019. In their letter dated April 29, 2021, the Government wrote to request that the Court appoint a Special Master to conduct a filter review of potentially privileged materials seized on April 28, 2021. According to the Government, the review of these materials may encompass "unusually sensitive privilege issues." *See*, 4/29/21 Ltr. We agree. Here, the Government has executed unprecedented search warrants on the personal attorney to the former President of the United States. The Government draws current parallels to the privilege issues dealt with by Judge Wood in *In re the Matter of Search Warrants Executed on April 9, 2018*, No. 18 MJ 3161 (S.D.N.Y. Apr. 16, 2018), which also involved a warrant executed on the offices of President Trump's former personal lawyer – Michael Cohen. However, the timeliness of Government's request for a Special Master to oversee the filter of the recently seized privileged matters is concerning, considering the materials the Government already seized from Apple, Inc. – and reviewed - pursuant to a search warrant executed in November 2019 (the "2019 Search Warrant"). The 2019 Search Warrant called for the seizure of nearly identical information as was seized on April 28, 2021. However, unlike the recent search warrants, which were executed overtly, the 2019 Search Warrant was executed covertly, which eliminated Giuliani's ability to challenge the manner the responsive material was reviewed.

In 2019, the Government seized contents of Giuliani's iCloud account and associated data. They were aware that this seizure contained the very same "unusually sensitive privilege issues" as the material seized on April 28, 2021. Yet, unlike in this instance, they failed to notify the Court to request a Special Master be appointed to conduct a review of the privileged materials. Instead, knowing the procedures previously instituted by Judge Wood in a nearly identical scenario, prosecutors within the Southern District of New York conducted the search entirely by themselves. This is highly objectionable. Considering the sensitive privilege issues at stake, we are requesting that the Court order the Government to immediately provide a copy of the entire search warrant return provided by Apple, Inc., in response to the 2019 Search Warrant, as well as a copy of the

922068.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 12

materials their "filter" team deemed non-privileged and responsive and relevant to the search warrant.

We object to any further review of the contents of the Giuliani's iCloud account or recently seized electronic devices by law enforcement. In addition, we certainly object to the use of a "taint" or "filter" team in connection with any review of the recently seized documents, electronic devices, or other evidence collected in this case. We request that we be allowed to make privilege determinations in the first instance in connection with any evidence collected by the Government. This is the only safe way to protect all applicable privileges and to prevent exposure to privileged material that may require intervention and remedy by the Court.

As the Court is certainly aware, there is a growing debate within this politically charged climate regarding whether investigations by different branches of the Government are being undertaken impartially. Moreover, in the Fall of 2019, during an intense debate over the impeachment and the campaign for the upcoming Presidential Election, with Giuliani publicly acting as President Trump's personal attorney, the Government decided to take the unprecedented step of seeking a search warrant for Giuliani's iCloud account.  In these circumstances, on the heels of the precautions instilled by Judge Wood in a nearly identical situation, the use of a one-sided "filter" team was highly inappropriate and inadequate to identify privileged materials and thereby protect  Giuliani and his clients 'attorney-client privilege, and highly indicative of the appearance of impropriety. Had this been done overtly, or through the Government's less onerous subpoena powers, we would have requested that a Special Master to be appointed at the time. Instead, the Government has had these private, confidential, and privileged materials in their possession for over eighteen months, and established a Taint Team who acted as prosecutor, defense lawyer, Special Master and Judge entirely in secret, knowing full well this contravened the protocol established in the Cohen case.

In general, "filter" teams raise serious ethical and legal concerns. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d at 164, 174-75 (stating that use of "filter" team "contravenes foundational principles that protect attorney-client relationships," and noting Sixth Amendment concerns in that infringement); *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006) (pointing to history of "filter" team errors to show the "obvious flaw in the taint team procedure: the government's fox is left in charge of the [subject's] henhouse, and may err by neglect or malice, as well as by honest differences of opinion"); *United States v. Castro*, 2020 WL 241112, at *2 (E.D. Mich. Jan. 16, 2020) ("It is . . . logical to suppose that taint teams pose a serious risk to holders of privilege[,] and this supposition is substantiated by past experience."); *United States v. Stewart*, 2002 WL 1300059, at *8 (S.D.N.Y. June 11, 2002) (noting that it is "important that the procedure adopted . . . not only be fair but also appear to be fair," contrary to appearance created by use of "filter" team).

These concerns are even greater where, as here, the materials in question are the files of an attorney and may include materials pertaining to clients unrelated to the alleged conduct, including the former President of the United States.  *See In re Search Warrant Issued June 13, 2019*, 942

922068.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 13

F.3d 159, 164, 174-75 (4th Cir. 2019); *see, e.g., United States v. Gallego*, 2018 WL 4257967, at *3 (D. Ariz. Sept. 6, 2018) (ordering appointment of special master to review attorney's files, in part based on "Sixth Amendment concerns" regarding "privileged materials pertaining to unrelated clients of [the defendant]."); *United States v. Stewart*, 2002 WL 1300059, at *10 (same). Mr. Giuliani also is under a professional obligation to safeguard his clients 'and former clients ' privilege to the maximum extent possible. *See Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967) (noting that lawyer has duty to invoke claim of privilege on clients 'behalf); N.Y. Rules of Prof'l Conduct R. 1.6(a) (presumptively prohibiting lawyer's disclosure of confidential and privileged information).

In this case, federal prosecutors have taken the unprecedented step of covertly seizing data and files of the personal attorney to the former President of the United States. Prior to the executions of the warrants at issue, prosecutors obtained the entirety of Giuliani's iCloud, which certainly had communications with, and on behalf of, the sitting President, containing material relating to the impending impeachment, the welfare of the country, and to national security. Given the complexity of Mr. Giuliani's personal and professional relationships and the related communications, it is a near impossible task to accurately list all individuals with whom Mr. Giuliani had a privileged relationship or communications. Indeed, Mr. Giuliani's privileged relationships and related obligations are complex, and ethical obligations prevent him from disclosing them in full. Mr. Giuliani has communicated extensively regarding privileged matters with innumerable clients and counsel for, about, and relating to current clients and/or entities that he represents. For these reasons, the privileged nature of certain communications would have been difficult or impossible for the 2019 "filter" team to ascertain, and will be similarly difficult for a Special Master.

Mr. Giuliani also remains under a professional ethical obligation not to disclose the identity of any clients who requested their identities remain confidential, or, if those clients 'wishes are unknown and his representation is not public knowledge, any disclosure that may be embarrassing or detrimental to their interests. *See* N.Y. Rules of Prof'l Conduct R. 1.6(a); NY Eth. Op. 1088, 2016 WL 1533284 (Mar. 31, 2016); *see also In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 180 (4th Cir. 2019), *as amended* (Oct. 31, 2019) (noting professional obligation to avoid disclosing confidential client identity, and approving that basis for law firm's refusal to provide client list to filter team).

The only adequate safeguard in this situation is an initial review by Giuliani's counsel. Such review parallels the procedure that would have been in place had the related materials been produced in response to a subpoena and is consistent with procedures the Department of Justice has followed in other cases involving similar circumstances. Any other approach is fraught with peril, particularly considering the covert manner in which the 2019 Search Warrant was handled, and the pattern of leaks by sources "close to the investigation." Lastly, Giuliani is entitled to the production of Apple's entire search warrant return production, as well as the material previously deemed non-privileged and responsive and relevant to the 2019 Search Warrant by the "filter" team.

922068.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 14

### C. Giuliani Has the Right to Know and Review the Material Seized Under the 2019 Warrant that the Government's Taint Team has not Deemed Privileged.

In November of 2019, the Government covertly obtained a search warrant (19 MAG 10364) of Giuliani's Apple iCloud Accounts assigned to certain telephone numbers and an email iCloud account maintained at premises controlled by Apple Inc, allegedly containing evidence, fruits, and instrumentalities of crime as specified in an attachment. That attachment required Apple to produce subscriber and payment information, device information and settings, transactional records, address book information, call history and voicemails, text message content, email content, photos and videos, documents, search and web histories, third-party application data, location date and iOS device backups.

In essence, the Government was looking for evidence that Giuliani was acting as an agent, unregistered agent or lobbyist of a Ukrainian national, government official, corporation or political party or in violation of the foreign agent registration and lobbying laws or making contributions on behalf of a foreign principal (see attachments to search warrant also citing 22 USC §§612 and 618, 18 USC §951, 18 USC §2, and 18 USC §371). Ironically, Giuliani and his counsel were ready, willing and able to demonstrate that he never acted as a foreign agent and had no reason to file. The government turned down every request to do so.

Giuliani has the right to know and review the material seized under the 2019 Search Warrant that the Government's taint team deems not to be privileged, and relevant and responsive to the search warrant Giuliani requires this information in order to determine whether a challenge is necessary as to any of the items being declared to be not subject to the attorney client or Presidential privilege.

This request does not seek and does not involve the disclosure of any secret information. The iCloud and the material and information therein are accessible to Giuliani despite the Government's search and seizure of the information contained therein. Giuliani's request should be granted as no secret information will be disclosed that Giuliani does not have the ability to access. The Government cannot argue that their declaration of what information and material that it deems not subject to any privilege will compromise their investigation or any potential prosecution.

To reiterate, Giuliani simply seeks a declaration and clarification by the Government of what information and material that was viewed by the Government's taint team is not subject to any privilege. This information is necessary so that Giuliani is able to challenge, if need be, the Government's determination that a specific item is not privileged.

The Government, in its letter of April 29, 2021 to the Court, requested that a Special Master be appointed "to conduct the filter review of potentially privileged materials seized pursuant to the above captioned [April 21, 2021, 21 Mag. 4335; April 28, 2021, 21 Mag. 4591] warrants." The Government's recognition that a Special Master be appointed regarding a review of the materials

922068.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 15

seized pursuant to the 2021 search warrants, underscores the need for the Government's disclosure to Giuliani and his attorneys of the iCloud information and material seized pursuant to the 2019 search warrant which was deemed unilaterally by their taint or filter team not to be subject to the attorney client or any other privilege.

When the search of an attorney's information is involved, especially an attorney who represents the President of the United States, the appropriate practice, after ample opportunity is given to challenge the legality of the search is to appoint a Special Master rather than utilize the Government's taint or filter team. Here, there was no opportunity to apply to the Court for an alternate method to filter out privileged material relating to the 2019 search warrant. Thus, the only fair and equitable remedy is to grant Giuliani's request to have the Government declare and inform him of what material they consider and deem to by unprotected by any privilege.

**D. Giuliani Reserves the Right to Make an Application Pursuant to *Franks v. Delaware*, After a Review of the Search Warrant Affidavits.**

Over forty years ago, the United States Supreme Court held that a search warrant can be challenged based on false statements in the affidavit in support of the warrant or, in the alternative, based on the improper omission of material facts. *Franks v. Delaware*, 483 US 154 (1978).

In *Franks*, the court held that a warrant can be controverted, and evidence suppressed, based on intentionally or recklessly made misstatements that are necessary to the finding of probable cause. Similarly, an omission of a material fact can lead to the contravention of a warrant where an omission occurred at least with reckless disregard of its effect upon the affidavit "as any reasonable person would have known that this was the kind of thing the judge would wish to know." *United States v. Jacobs*, 986 F2d 1231 (8th Cir 1993).

In the instant case, it is our position that the Government may have omitted material information on its application for the search warrant issued on April 21, 2021. For example, prosecutors from the Southern District likely knew that Giuliani, through his counsel, as detailed above, offered his full cooperation to the Department of Justice as early as November 2019.

It is our position that, in applying for the search warrant to seize Giuliani's electronic equipment in his office and home, prosecutors may not have informed the court of the above information concerning Giuliani's which, we believe, would have been material in an assessment of probable cause.

In the past, courts have found that material omissions can be fatal to an affidavit in support of a search warrant. Thus, in *Wilson v. Russo*, 212 F3d 781 (3rd Cir 2000), omissions were made with reckless disregard of a fact that any reasonable person would have known was the kind of thing a judge would want to know.

922068.v1

**DAVIDOFF HUTCHER & CITRON LLP**

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 16

In *U.S. v. Gifford*, 727 F3d 92 (1st Cir 2013) the court held that certain omitted facts were critical to the probable cause determination. Similarly, in *U.S. v. Jacobs*, 986 F2d 1231 (8th Cir 1983), the court held that because of the highly relevant nature of the omitted information, the omission occurred at least with reckless disregard of its effect upon the search warrant affidavit, as any reasonable person would have known that this "was the kind of thing the judge would wish to know."

Thus, once the information in the affidavits is disclosed to Giuliani, he reserves the right to make a *Franks* application, in the event the prosecution omitted to include his extensive cooperation as outlined above.

## CONCLUSION

We believe the foregoing facts establish that , there are issues that must first be addressed by the Court before considering the appointment of a Special Master. We respectfully ask the Court to rule on this application before making its decision on the appointment of a Special Master.

Respectfully submitted,

DAVIDOFF HUTCHER & CITRON LLP

/s/ Robert J. Costello
Robert J. Costello (RC-8301)
*Counsel for Rudolph Giuliani*

AIDALA, BERTUNA & KAMINS PC
Arthur Aidala
Hon. Barry Kamins ( Ret.)
Hon. John M. Leventhal (Ret.)
Michael Jaccarino

By: /s/ Arthur Aidala

*Co-Counsel for Rudolph Giuliani*
545 Fifth Avenue
New York, New York 10036
Tel: (212) 486-0011

cc: AUSA Rebekah Doneleski
    AUSA Nicolas Roos
    AUSA Aline Flodr

922068.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
May 12, 2021
Page 17



**EXHBIT 1**

922068.v1