UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

                                          :

IN RE WARRANTS DATED APRIL 21,
2021 AND APRIL 28, 2021.                   :               **21 Misc. 425 (JPO)**

                                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**THE GOVERNMENT'S REPLY IN SUPPORT OF ITS REQUEST FOR A SPECIAL
MASTER AND OPPOSITION TO THE MOTIONS OF RUDOLPH GIULIANI AND
VICTORIA TOENSING**

 

AUDREY STRAUSS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Rebekah Donaleski
Aline R. Flodr
Nicolas Roos
Assistant United States Attorneys
-Of Counsel-

## PRELIMINARY STATEMENT

On April 28, 2021, agents with the Federal Bureau of Investigation executed three premises search warrants that permitted the seizure of electronic devices belonging to Rudolph Giuliani, Giuliani Partners LLC, and Victoria Toensing.  The warrants authorizing the searches of those devices were issued by a United States District Judge—this Court—on a finding that there was probable cause to believe that those devices contained evidence, fruits, and instrumentalities of specified federal crimes.  The warrants arose out of an ongoing grand jury investigation, during the course of which, in 2019, the Government also sought and obtained from this Court warrants to search the contents of iCloud and email accounts belonging to Giuliani and Toensing.

The search of devices and accounts belonging to attorneys, like Giuliani and Toensing, requires special care in order to protect the confidentiality of attorney-client communications that may be found in searched materials.  The Government takes its obligation to safeguard the attorney-client privilege seriously and followed the prevailing practice in this District, as well as Department of Justice guidance, in seeking and executing search warrants, and reviewing seized materials.  The Government has now gone above and beyond those obligations in seeking the appointment of a special master to review the recently seized materials for potential privilege. While the law does not require the appointment of a special master, the Government believes it is appropriate here based on the unique circumstances of this investigation and the very public nature of the searches at issue, in order to ensure that the privilege review process is both fair and has the appearance of fairness.

But, to be clear, the mere fact that Giuliani and Toensing are lawyers does not mean that they are above the law or immune to criminal investigation.  Yet that is effectively what Giuliani and Toensing argue in their motions: because they are lawyers, the execution of search warrants

1

upon them was illegal and inappropriate, and as such they are entitled to the extraordinary and unprecedented remedy of converting lawfully-issued search warrants into subpoenas, so that they can review their own materials and decide what the Government gets to see.  That is not the law, and their requests otherwise should be denied.

*First*, the primary issue before this Court is the Government's request to appoint a special master to review the materials seized in April 2021 for potential privilege.  Giuliani and Toensing do not appear to dispute that such an appointment is appropriate.  But contrary to Toensing's suggestion that she be permitted to first conduct her own review for privilege and responsiveness to the terms of the warrant, the Court should follow the example set by the Honorable Kimba M. Wood in a recent and similar case, by appointing a special master to expeditiously conduct a privilege review, with input from counsel for Giuliani and Toensing, after which time the Government would conduct its own responsiveness review of the materials released by the special master.

*Second*, the remaining requests made by Giuliani and Toensing are either meritless, contrary to law, or at best premature, and should be denied.  Giuliani is not entitled to the unsealing of the affidavits supporting the warrants, a request that is unsupported by the case law and would amount to giving him a detailed preview of the Government's evidence before a criminal action had even been initiated.  Nor is Toensing entitled to a return of property—which has already been returned and to which she already has access—or to pre-charge discovery, which both she and Giuliani seek.

*Finally*, the Government's use of a filter team to review the 2019 warrants was entirely appropriate and in accordance with the prevailing practice within this District, particularly in light of the covert nature of the warrants and the investigation at the time they were issued.

The Court should grant the Government's motion to appoint a special master, and deny the remaining requests by Giuliani and Toensing.

## I.      FACTUAL BACKGROUND

As noted, on April 28, 2021, agents of the FBI executed premises search warrants on three locations: Toensing's residence, Giuliani's residence, and the offices of Giuliani Partners LLC, a management consulting and security consulting business founded by Giuliani (collectively, the "2021 Warrants").  The 2021 Warrants were supported by detailed affidavits, and authorized by this Court and a United States Magistrate Judge in Maryland, who each found probable cause to believe that evidence of violations of specified offenses would be found at the subject premises and on the subject devices.  (*See* Gov't Apr. 29, 2021 Ltr. at 1-3).

The April 28, 2021 searches were executed by FBI special agents who were not part of, and will never be part of, the investigative team.  (Gov't Apr. 29, 2021 Ltr. at 1).  The Government seized eighteen electronic devices from Giuliani's premises, and one electronic device from Toensing's residence.  Technical specialists with the FBI have successfully downloaded eleven devices belonging to Giuliani, all of which have been returned to him.  The remaining seven devices belonging to Giuliani and his business cannot be fully accessed without a passcode, and as such the Government has advised Giuliani's counsel that the devices can be returned expeditiously if Giuliani were to provide the passcode; otherwise, the Government does not have a timeline for when those devices may be returned because the FBI will be attempting to access those devices without a passcode, which may take time.  The FBI has already downloaded and returned Toensing's device.  The Government has not reviewed any of the materials obtained pursuant to the April 28, 2021 searches.

These searches were the result of an ongoing, multi-year grand jury investigation into conduct involving Giuliani, Toensing, and others.[1]  As part of that grand jury investigation, in November and December 2019, the Government sought and obtained from this Court search warrants pursuant to the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.* ("SCA"), for iCloud accounts belonging to Giuliani and Toensing as well as an email account belonging to Toensing (the "2019 Warrants").  (*See* Gov't Apr. 29, 2021 Ltr. at 1, 3).[2]  The 2019 Warrants were also supported by detailed affidavits and issued based on probable cause findings that Giuliani's and Toensing's accounts would contain evidence of specified crimes.  Finally, each of the warrants included the following provision because Giuliani and Toensing are attorneys:

> Additionally, review of the items [. . .] shall be conducted pursuant to established procedures designed to collect evidence in a manner reasonably designed to protect any attorney-client or other applicable privilege.  When appropriate, the procedures shall include use of a designated "filter team," separate and apart from the investigative team, in order to address potential privileges.

---

[1] Challenges to the execution of search warrants are typically filed after defendants have been indicted, such that the Government's responsive briefing can cite to facts set forth in charging documents.  Here, given that charges have not been filed and the grand jury investigation is ongoing, the Government is constrained in terms of the facts that it may put before the Court at this juncture.  For similar reasons, although principally Giuliani and to some extent Toensing set forth various facts in their motions that the Government does not agree with or consider to be accurate, this is not the appropriate juncture to address each of those claims.  To the extent the Court has questions for the Government related to the ongoing grand jury investigation, the Government is prepared to provide that information *ex parte* and under seal.

[2] Contrary to Giuliani's claims (Giuliani Ltr. at 1) that it was somehow improper to not notify him of the 2019 Warrants at the time they were obtained, the SCA provides that the Government "may apply to a court for an order commanding a provider of electronic communication services . . . to whom a warrant . . . is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant" where the court "determines that there is reason to believe that notification of the existence of the warrant . . . will result" in one of the enumerated harms set forth by statute.  18 U.S.C. § 2705(b).  That is precisely what the Government did here.

As such, the Government utilized a filter team comprised of attorneys and FBI special agents who were not and have never been part of the investigative team to review the materials obtained pursuant to the 2019 Warrants. The filter team was supervised by two senior Assistant United States Attorneys, who followed established protocols designed to protect the attorney-client and other applicable privileges in conducting their review. Those protocols were developed in consultation with the Department of Justice's Office of Enforcement Operations, consistent with the guidance provided by the Justice Manual. As relevant here, the filter team only released materials to the investigative team that had been reviewed by the filter team and designated as not potentially privileged. (*See* Gov't Apr. 29, 2021 Ltr. at 1, 3). As is its practice, the filter team did not release any potentially privileged materials based on the possible application of waiver or crime fraud principles, even if the applicability of those exceptions was apparent on the face of the document. The filter team's review of materials obtained pursuant to the 2019 Warrants is largely complete, as is the Government's responsiveness review of the materials released to the investigative team by the filter team.

## II.    THE COURT SHOULD APPOINT A SPECIAL MASTER

The primary issue before this Court is whether to appoint a special master to conduct the filter review of potentially privileged materials seized pursuant to the 2021 Warrants. Although Giuliani and Toensing do not appear to dispute that the appointment of a special master is appropriate, they propose that the materials seized pursuant to the 2021 Warrants be returned and that they be permitted to review the materials in the first instance and produce to the Government what they deem to be non-privileged and responsive. (*See* Giuliani Ltr. at 1, 13; Toensing Ltr. at 1, 4, 7-8). Toensing concedes that this process should be done "under the supervision of a Special Master." (Toensing Ltr. at 1, 4). Giuliani and Toensing's proposals find no support in the law of

this Circuit.  The Court should instead adopt the procedures ordered by Judge Wood in *In re the Matter of Search Warrants Executed on April 9, 2018*, No. 18 Misc. 3161 (S.D.N.Y. Apr. 16, 2018) [hereinafter *Cohen*], and appoint a special master to expeditiously conduct the filter review of potentially privileged materials, which can be supplemented and informed by Giuliani and Toensing's parallel review of the same seized materials, after which the Government's investigative case team can conduct a responsiveness review of the released materials.  *See id.* (Dkt. 30).

Giuliani and Toensing's proposal to allow their own counsel to conduct the initial review of materials seized pursuant to lawfully executed search warrants, including making determinations of what materials are responsive to the warrants, on their own timeline is without any precedent or legal basis.  The Government is aware of no precedent for such a practice, which has the effect of converting judicially authorized search warrants into subpoenas.  (*See* Giuliani Ltr. at 13 (asking the Court to allow Giuliani's counsel to conduct the "initial review" as such a procedure "parallels the procedure that would have been in place had the related materials been produced in response to a subpoena . . ."); Toensing Ltr. at 9 (asking the Court to allow "Ms. Toensing to process the data as she would in response to a subpoena and produce a privilege log before the Government or a Special Master reviews the outstanding data")).  But the Government specifically chose not to proceed by subpoena in this case, for good reason, and there is no precedent for permitting the subjects of an investigation to override the Government's choice in this regard.[3]

---

[3] Giuliani relies on the Justice Manual ("JM") for the argument that search warrants should not have been executed here because the JM requires the "least intrusive way to obtain evidence from a lawyer."  (Giuliani Ltr. at 7).  In this vein, Giuliani cites to his self-described attempts at cooperation.  (*Id.* at 6-8).  But Giuliani neglects that the JM permits such searches where use of other methods "could compromise the criminal investigation or prosecution, or could result in the

None of the cases cited by Giuliani or Toensing supports their proposed approach. Toensing principally relies on *United States v. Stewart*, No. 02 Cr. 395 (JGK), 2002 WL 1300059, at *4-8 (S.D.N.Y. June 11, 2002),[4] but that case is readily distinguishable because it involved the seizure of documents from several criminal defense attorneys who were *not* subjects of the Government's investigation and had many cases before the same prosecuting office. (*See infra* at pp. 33-34). In any event, the Court appointed a special master in *Stewart*, as the Government seeks here. And the procedures adopted in *Stewart* illustrate why the Government's proposed approach is preferable. In *Stewart*, the presiding judge initially believed that the special master's review could be conducted expeditiously because the defendant's counsel could quickly produce a privilege log (as Toensing seeks to do here). *Id.* at *8. But 15 months later, the judge lamented that the special master still had not produced a report on the seized materials. *United States v. Sattar*, No. 02 Cr. 395 (JGK), 2003 WL 22137012, at *22 (S.D.N.Y. Sept. 15, 2003), *aff'd sub*

---

obstruction or destruction of evidence." JM § 9-13.420. Here, the Government followed the applicable JM guidelines by, among other things, consulting with the Department of Justice's Office of Enforcement Operations, implementing safeguard procedures in the warrant and during the execution of searches, and considering and rejecting "less intrusive means." In any event, it is well settled that the JM "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal." JM § 1-1.100; *see also United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir. 1994) (JM "guidelines . . . provide no substantive rights to criminal defendants").

[4] Toensing cites a handful of out-of-circuit cases criticizing the use of filter teams in certain distinguishable contexts. Those decisions are distinguished *infra*, but in no event do they undermine the Government's request for an appointment of a special master. Toensing also mischaracterizes the facts of *Stewart* when she claims that in that case, the court directed the "Government to return two original hard drives seized from the attorney's office," implying that the government returned all of the seized materials to the defendant. (Toensing Ltr. at 5). In fact, the court directed the government to make two *copies* of the entire set of documents and computer data that were seized (without reviewing the substance of any documents or computer information), to transfer one copy to the special master and one to the defendant, then return the original hard drives seized, but that the government should retain its own copy of all the materials under seal pending the special master's review. *Stewart*, 2002 WL 1300059, at *10.

*nom. United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009). That cumbersome process stands in stark contrast to that adopted by Judge Wood in *Cohen*, wherein the special master completed her review on an expedited basis in parallel to Cohen's counsel, and set deadlines for Cohen's counsel to object to any of her designations. (*Cohen*, Dkt. 39 at 1-2). In *Cohen*, the special master was appointed in April 2018, and her review was complete by August 2018. The *Cohen* search involved approximately the same number of electronic devices seized here, but also included significant quantities of hard copy documents, which are not at issue here. In sum, the Court should follow the model set forth in *Cohen*, which resulted in an efficient and effective privilege review. (*See Cohen*, Dkt. 103 at 2-4, 6 (Judge Wood further describing procedure and noting that "[t]he Special Master has performed her review with extraordinary efficiency and speed, while giving the parties a full[] opportunity to be heard")).

Toensing appears to misunderstand this procedure when she contends that "in camera review of documents for privilege, which is akin to review exclusively conducted by a Special Master," is disfavored. (Toensing Ltr. at 5). The Government is not proposing exclusive review by a special master for privilege, but a process informed by Giuliani and Toensing's parallel review of the materials for privilege. Here, as in *Cohen*, the subjects of the search would have an opportunity to provide the special master with information that will inform the special master's privilege review, and would have the opportunity to object to designations made by the special master. (*Cohen*, Dkt. 39 at 1-2; Dkt. 65 at 1-3). Toensing's concerns about the decision-maker having insufficient information to make privilege determinations are unfounded.

Such concerns merely serve to highlight the many countervailing problems with Giuliani and Toensing's proposal: under their approach, the subjects of a criminal investigation would have the authority to make unilateral determinations not only of what is privileged, but also of what is

*responsive* to a warrant.  Neither Giuliani nor Toensing outline any procedure or method for the Government to challenge their counsel's representation of a document as non-responsive. Moreover, not only does the law preclude Giuliani and Toensing's proposal to themselves perform a responsiveness review; it is also wholly inappropriate because Giuliani and Toensing are simply not equipped to perform one.  They do not know (and are not entitled to know) everything the Government has learned over the multi-year grand jury investigation, and would therefore inevitably disregard potentially valuable evidence to the investigation.[5]  This is untenable.  It would undermine the Government's investigation and block lawful evidence gathering in accordance with judicially-approved warrants.

Moreover, even were Giuliani and Toensing to narrow their request to focus only on privilege determinations, the fact that they would still remain gatekeepers of *all* of the seized materials while any disputes were resolved, whether by the Court or an appointed special master, would result in extensive delay and prevent the Government from reviewing evidence to which it is entitled pursuant to the 2021 Warrants.  This Court should not permit Giuliani and Toensing to stall the investigation of their conduct in this manner, particularly where the Government's proposal will allow them to conduct the same review in parallel with a special master.  The Government's proposal to appoint a special master to review the seized materials is the only proposal that is fair to all parties, respects the unique privilege issues that the 2021 Warrants may implicate, and will ensure that Government's investigation proceeds without undue delay.[6]

---

[5] The concern similarly applies to any responsiveness review conducted by a special master.  There is no reason to believe that a lawyer fully briefed on the investigation would be able to conduct a responsiveness review as accurately as members of the investigative team who have been conducting the investigation for years.  Nor are the concerns that motivate special master review—protecting the attorney-client privilege—present in the more routine context of determining responsiveness to a warrant.

[6] In the *Cohen* matter before Judge Wood, the Government and Cohen split the costs

## III.   THE REMAINING REQUESTS BY GIULIANI AND TOENSING SHOULD BE DENIED

Giuliani and Toensing's additional requests proceed from a central premise: that a different set of rules apply to them because of who they are, whether it is because they are lawyers or lawyers with important clients.  Giuliani and Toensing are lawyers, to be sure.  But this Court has found probable cause that their devices and accounts contain evidence of specified federal crimes.  Nevertheless, Giuliani argues that, quite unlike other subjects of criminal investigations, he is entitled to review the affidavits supporting the warrants, which would effectively give him the extraordinary benefit of knowing the Government's evidence before even being charged with a crime.  Giuliani and Toensing seek pre-charge discovery of all of the Government's responsiveness and privilege designations before a criminal case has been initiated, even though they are not entitled to such discovery.  Toensing seeks the extraordinary remedy of depriving the Government of *all* access to lawfully obtained evidence, so that she may determine which of her own emails, text messages, and data the Government is entitled to see.  Giuliani also seeks to bring pre-charge suppression motions, which are contrary to law and seek to deprive the grand jury of evidence to which it is legally entitled.  Giuliani and Toensing challenge the Government's use of a filter team to review the 2019 Warrants, which was entirely appropriate, common-place, and done with the precise purpose of protecting attorney-client and other applicable privileges.   Giuliani and

---

associated with the special master's privilege review.  Here, because the Government made the initial request of the Court and considers the appointment of a special master appropriate in this matter, the Government is willing to bear the costs of the review insofar as the special master follows the procedures adopted by Judge Wood in the *Cohen* matter, namely to review the seized materials for potential privilege in parallel with counsel for Giuliani and Toensing.  To the extent the Court adopts the proposals advanced by Giuliani and Toensing, including that the special master also conduct a responsiveness review of those same materials—which the Government strongly opposes for the reasons set forth above—Giuliani and Toensing should solely bear any costs associated with a responsiveness review, any review beyond the initial privilege review, or any cost-enhancing measures traceable to Giuliani and Toensing.

Toensing, like anyone, are entitled to the full protection of the law—but no more.  Their efforts to deprive the Government of lawfully obtained evidence are meritless and in many respects premature.  The Court should deny each of their requests.

### A.     The Warrant Affidavits Should Remain Under Seal

Giuliani asks this Court to unseal the affidavits submitted in support of the 2019 Warrants and 2021 Warrants so that he may litigate the legality of the warrants.  (*See* Giuliani Ltr. 9-11).  The affidavits should remain under seal.  Premature disclosure of the affidavits, even in redacted form or pursuant to a protective order, would reveal the evidence uncovered through the multi-year grand jury investigation, which would risk compromising and obstructing that ongoing investigation.  And even if Giuliani's purported interest in evaluating any suppression motions or learning precisely what evidence the grand jury investigation has uncovered was a basis for unsealing—and it is not—that does not and cannot outweigh the Government's compelling interest in protecting an ongoing grand jury investigation.

### 1.     Applicable Law

As a general matter, the public's right of access to judicial documents is governed by the common law and the First Amendment.  *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139-44 (2d Cir. 2016) (common law right of access).  Under either approach, the Court must first consider whether the document in question is a judicial document. To be considered a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).  Search warrant affidavits are generally considered to be judicial documents.  *See, e.g.*, *United States v. All*

*Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 583-84 (S.D.N.Y. 2009) (finding seizure warrants to be judicial documents).

With respect to the First Amendment right of access, the Second Circuit has articulated two approaches for determining whether certain judicial documents qualify for that right. *Lugosch*, 435 F.3d at 120. First, under the "experience and logic" approach, the First Amendment protects access where (1) the documents "have historically been open to the press and general public," and (2) where "public access plays a significant positive role in the functioning of the particular process in question." *Id.* (internal quotation marks omitted). "The second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id*. (alterations and internal quotation marks omitted).

The Second Circuit has not yet ruled on the question of whether there is any right of public access to search warrant affidavits in the pre-charge context. The Ninth Circuit has refused to find any "right of access to search warrant proceedings and materials when an investigation is ongoing but before indictments have been returned," including under the First Amendment, common law, and Rule 41 of the Federal Rules of Criminal Procedure. *Times Mirror Co. v. United States*, 873 F.2d 1210, 1221 (9th Cir. 1989). The Second Circuit has declined to extend the Ninth Circuit's holding in the post-plea context. *See Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (holding that newspaper had no First Amendment right to access sealed wiretap applications, and stating that "without deciding whether we would concur in *Times-Mirror's* result, we decline to extend its holding. Here, the warrant has been executed, a plea-bargain agreement has been reached, the government admits that its need for secrecy is over, and the time has arrived for filing the application with the clerk. In these circumstances, there is a common law right to inspect what is commanded thus to be filed."). The majority of Circuit Courts to have considered the question

have agreed with the Ninth Circuit insofar as its holding relates to the First Amendment, but many have found there to be a qualified right of access based on the common law.  *See, e.g.*, *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64-65 (4th Cir. 1989) (finding no constitutional right of access but holding common law right attaches once warrant is filed); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574-75 (8th Cir. 1988) (finding qualified right of access to documents filed in support of search warrants).  Similarly, many district courts within this Circuit have adopted similar reasoning in holding that there is no First Amendment right of access to search warrant affidavits, although there is a qualified right of public access based on the common law.  *In re Search Warrant*, No. 16 Misc. 464 (PKC), 2016 WL 7339113, at *4 (S.D.N.Y. Dec. 19, 2016) (finding no First Amendment right of judicial access to search warrant affidavits but applying common law right of access); *All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d at 583 (same, and recognizing that search warrant application procedures have historically been closed to the press and public and "highly secret in nature").

Accordingly, courts within this Circuit typically consider the question of right of access to search warrant affidavits under the common law.  *See, e.g.*, *Newsday*, 895 F.2d at 74 (analyzing general right to inspect judicial records and documents under the common law).  This is equally applicable for motions brought by the subjects of the search warrants, like here, and members of the public or press.  *See, e.g.*, *Matter of Searches of Semtex Indus. Corp.*, 876 F. Supp. 426, 429 (E.D.N.Y. 1995) (denying motion filed by subject of search warrants to unseal affidavits and analyzing question under the common law); *In re Search Warrant*, 2016 WL 7339113, at *4 (denying third party motion to unseal search warrant affidavit and analyzing question under common law).  Under the common law approach, once a court determines that the item in question is a judicial document, and thus subject to the common law presumption of access, the court must

13

"determine the weight" of that presumption. *United States v. Erie Cty., N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014) (quoting *Lugosch*, 435 F.3d at 119). "The weight to be given to the presumption of access is governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Erie Cty.*, 763 F.3d at 239 (quoting *Amodeo*, 71 F.3d at 1049) (internal quotation marks omitted).

The court must then balance competing considerations against disclosure and may only deny public access to the document when the competing interests outweigh the presumption of access. *Erie Cty.*, 763 F.3d at 239. Of critical relevance here, those competing interests include protecting an ongoing grand jury investigation, and courts routinely deny similar requests, particularly when a grand jury investigation remains ongoing. The Second Circuit has repeatedly affirmed the need for secrecy in ongoing grand jury proceedings: "Among other things, if matters relating to grand jury proceedings became public, prospective witnesses may be deterred from testifying, those who do testify may be less likely to do so truthfully, targets of investigations may flee, and persons who are the subject of an ultimately meritless investigation may face public embarrassment." *United States v. Haller*, 837 F.2d 84, 87-88 (2d Cir. 1988) (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 & n.10 (1979) (recognizing "that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings")); *United States v. Pirk*, 282 F. Supp. 3d 585, 602 (W.D.N.Y. 2017) (denying motion to unseal search warrant affidavit due to "need to maintain confidentiality due to the ongoing nature of [the Government's] investigation" particularly where affidavit contained witness information); *In re Search Warrant*, 2016 WL 7339113, at *4 (denying motion to unseal search warrant affidavit due

to "strict secrecy of grand jury proceedings" and "concerns with revealing the identities of persons of interest in criminal investigations").[7]

## 2.   The Affidavits Should Remain Under Seal

Giuliani contends that he is entitled to review the warrant affidavits in order to litigate, if necessary, the warrants' legality. As explained *infra* at pp. 29-31, this purported interest cannot justify unsealing, because the remedy at this pre-indictment stage is limited to return of property, not suppression. Thus, what Giuliani truly seeks is a preview of the evidence relating to him prior to even being charged with a crime, during the pendency of the grand jury investigation. Giuliani does not cite a single case, in the pre-indictment context during the pendency of an active grand jury investigation, in which the Court granted the extraordinary relief he seeks. Indeed, courts within this Circuit regularly deny such motions in this context in order to protect ongoing grand jury investigations, and the Court should do the same here.

As an initial matter, the Court should analyze this question under the framework applicable to the common law right of access to judicial documents. Because search warrant proceedings are inherently *ex parte*, sealed, and secret proceedings, the First Amendment right of access does not apply. *See, e.g.*, *Newsday*, 895 F.d 74; *In re Search Warrant*, 2016 WL 7339113, at *4. Instead, this Court should follow the majority of the courts within this Circuit to have addressed the

---

[7] Giuliani also frames his motion to unseal the search warrant affidavits in terms of the Fourth Amendment, but he cites only a single district court case that involved a motion brought by a *charged defendant*. (Giuliani Ltr. at 10 (citing *Pirk*, 282 F. Supp. 3d at 591)). The Second Circuit has not addressed whether there is a Fourth Amendment right to examine a search warrant affidavit, but in an analogous context the Court held that the right to public access to sealed wiretap applications should be analyzed under the common law. *Newsday*, 895 F.2d at 78. And as the Seventh Circuit has explained, "the text of [the Fourth] Amendment does not address, even implicitly, the problem of lack of access to sealed search warrant affidavits." *Matter of EyeCare Physicians of Am.*, 100 F.3d 514, 517 (7th Cir. 1996) ("The Warrant Clause of the Fourth Amendment circumscribes the issuance of warrants, but does not address access to the affidavits employed to support them.").

question and find that the common law right of access applies to search warrant affidavits.  *See, e.g.*, *In re Search Warrant*, 2016 WL 7339113, at *4.

Any common law right of access that Giuliani has is easily outweighed by the need to protect the ongoing grand jury investigation.  The search warrant affidavits reflect the fruits of a multi-year grand jury investigation, and include, *inter alia*: discussion of significant quantities of materials that have not been publicly revealed and were obtained pursuant to search warrants and subpoenas; information provided by individuals to the Government pursuant to subpoena or otherwise; information about the Government's investigation and other law enforcement techniques and methods; and an analysis of how the Government views each piece of evidence fitting together and the significance of that evidence.  Revealing to Giuliani or others precisely what evidence the Government has collected, who the subjects of the investigation are, who the Government has interviewed, and how the Government views the evidence collectively could cause significant harms to the investigation, including causing witnesses to be unwilling to speak with the Government out of fear that their information will immediately be made public (including to the individuals under investigation), and causing witnesses to coordinate their testimony or potentially destroy evidence.  *See, e.g.*, *Pirk*, 282 F. Supp. 3d at 602 (denying motion to unseal search warrant affidavit due to "need to maintain confidentiality due to the ongoing nature of [the Government's] investigation" particularly where affidavit contained witness information); *In re Search Warrant*, 2016 WL 7339113, at *4 (denying motion to unseal search warrant affidavit due to "strict secrecy of grand jury proceedings" and "concerns with revealing the identities of persons of interest in criminal investigations"); *Haller*, 837 F.2d at 88 (noting need to protect third party privacy interests in maintaining grand jury secrecy); *see also Douglas Oil*, 441 U.S. at 218 (recognizing that "the proper functioning of our grand jury system depends upon the secrecy of

grand jury proceedings" and if proceedings were to become public, "prospective witnesses may be deterred from testifying [and] those who do testify may be less likely to do so truthfully").

Giuliani questions the Government's need for secrecy "about a case that has been continuously leaked to the media." (Giuliani Ltr. at 11).[8] Although there has been public reporting about the existence of this investigation, much of the information set forth in the affidavits is not publicly known. *In re Searches of Semtex.*, 876 F. Supp. at 429 (denying motion to unseal search warrant affidavits where "need for secrecy continues in a complex . . . investigation prior to indictment"). Giuliani also suggests that the affidavit be disclosed to him pursuant to a protective order, or in redacted form. Yet disclosing any information to Giuliani about the ongoing grand jury investigation would cause the same harms described above: it would amount to giving him a full preview of a secret grand jury investigation, including any potential evidence and information about who potential witnesses may be and what they would say. Any redactions are likewise inappropriate because the extent of redactions required would render the document meaningless. *See Matter of Eyecare Phys. Of Am.*, 100 F.3d at 519 ("We add that disclosing even a redacted version of the search warrant affidavit would enable the subjects of the investigation the opportunity to alter, remove, or withhold records" and accordingly "disclosure of the affidavits might very likely impair the ongoing criminal investigation").

The need to protect the Government's investigation is particularly stark when weighed against the reasons proffered by Giuliani as to why he is entitled to the affidavits: to engage in a fishing expedition, based solely on his own conjecture,[9] that there must have been something

---

[8] As the Government has repeatedly informed counsel for Giuliani, it takes seriously its obligation to preserve the secrecy and confidentiality of the grand jury investigation, and has done so here.

[9] Giuliani argues that he is entitled to the affidavits in order to investigate whether the Government leaked phone records (which would not be provided pursuant to an iCloud warrant)

improper in the affidavits or about the way in which the Government obtained the warrants. But Giuliani has not advanced any facts indicating there was anything improper about the affidavits or the way the warrants were issued, and as discussed below, the materials are not necessary for Giuliani because of the remedies available to him at this stage under Rule 41.

Similarly unsupported is Giuliani's request for unsealing so that he may evaluate whether there was a basis for the non-disclosure order issued with the search warrant relating to his iCloud account. (Giuliani Ltr. at 3). This Court found, pursuant to 18 U.S.C. § 2705, that there was a sufficient basis to require that Apple delay notice to Giuliani. In this case, as in others, delayed notification was appropriate because the Government had "a compelling interest in maintaining the confidentiality of the existence of [a] [w]arrant, and the specific accounts being investigated, in order to avoid revealing the existence of its ongoing criminal investigation of individuals and entities who may be involved in the very conduct under investigation." *Google LLC v. United States*, 443 F. Supp. 3d 447, 453 (S.D.N.Y. 2020). There is no reason that Giuliani needs to be provided the affidavit and application supporting the request for delayed notification. Among other things, the search warrant to Apple is now known to Giuliani, so there is nothing for him to challenge, and even if he had been notified prior to the warrant's execution, he would have lacked statutory standing to bring a pre-execution challenge. *See In re Application of the U.S. for an Ord. Pursuant to 18 U.S.C. sec. 2703(d)*, 830 F. Supp. 2d 114, 128 (E.D. Va. 2011). While, as discussed below, Giuliani's remedies are limited since this is not an indicted case, nothing about the fact that

---

or text messages to the House Impeachment Committee. (Giuliani Ltr. at 10). There is no evidence to support this outlandish accusation, and in any event, a subject's desire to "investigate" his own unsupported conjectures is simply not a proper basis to unseal affidavits, and Giuliani cites no case in support of that bootstrapping proposition.

there was a non-disclosure order has prevented him or will prevent him from seeking redress at an appropriate stage.

If Giuliani is charged with a crime, he will, like any other criminal defendant, be entitled to production of the search warrant affidavits in discovery, at which time he will be free to litigate any motions related to the warrants as governed by Federal Rule of Criminal Procedure 12. Conversely, if the Government's grand jury investigation concludes without criminal charges, then the sealing calculus may be different, and Giuliani may renew his motion. *See, e.g.*, *In re Search Warrant Executed Feb. 1, 1995*, No. 18 Misc. 65 (RJW), 1995 WL 406276, at *3 (S.D.N.Y. July 7, 1995) (denying motion to unseal search warrant affidavit but permitting renewal of motion if grand jury fails to indict petitioner "within a reasonable period of time"). Accordingly, the Court should deny the motion to unseal the affidavits at this time.

**B.     The Motions for Return of Property and Pre-Charge Discovery Should be Denied**

Toensing moves the Court to order the return of materials seized pursuant to the 2019 and 2021 Warrants. (Toensing Ltr. 1). Toensing already has access to the materials seized pursuant to the 2019 Warrant, and the Government has already returned to her the cellphone seized pursuant to the 2021 Warrant. To the extent Toensing is claiming that the Government cannot retain a copy of these lawfully obtained materials, her request should be denied as without any support in the law.

Relatedly, Giuliani and Toensing seek pre-charge discovery of the Government's privilege and responsiveness designations with respect to the 2019 Warrants so that they may "determine whether a challenge is necessary" as to those designations. (Giuliani Ltr. 14; Toensing Ltr. 1). But there is no basis in law to order the unprecedented pre-charge discovery they seek with respect to the 2019 Warrants. Federal Rule of Criminal Procedure 16 governs the production of discovery

to criminal defendants, which Giuliani and Toensing are not.  If there is a criminal proceeding, the Government will produce the affidavits, warrants, and materials seized pursuant to those warrants, and at that time, the warrants' legality can be litigated.

      1.    <u>Applicable Law</u>

Under Rule 41(g), "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."  Fed. R. Crim. P. 41(g).  "To prevail on a Rule 41(e) [, now 41(g),] motion, a criminal defendant must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended." *United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987) (internal citations omitted); *see Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002) ("A defendant's right to the return of lawfully seized property is subject to the Government's legitimate continuing interest in that property."); *United States v. Wright*, 610 F.2d 930, 939 (D.C. Cir. 1979) ("The whole thrust of the cases that we have cited is that when property is seized from a person, the court must return it to that person when it is no longer needed by the government." (internal citations omitted)).  The Court should weigh the government's interest in the continued retention of the property against the owner's right to its use.  *In re Application of Madison*, 687 F. Supp. 2d 103, 118 (E.D.N.Y. 2009).  "In striking this balance, courts need not order the return of lawfully seized property where the government has a 'continuing interest' in the property" and an "ongoing grand jury investigation is an appropriate continuing interest." *Id.* (internal citations omitted); *see also United States v. Ganias*, 824 F.3d 199, 215 (2d Cir. 2016) (en banc) ("Preservation of the original medium or a complete mirror may therefore be necessary in order to safeguard the integrity of evidence that has been lawfully obtained or to authenticate it at trial." (internal citations omitted)); *United*

*States v. Carpenter*, No. 13 Cr. 226 (RNC), 2015 WL 9461496, at *6-7 (D. Conn. Dec. 24, 2015) (The government had a "legitimate interest in retaining the documents for review and possible use as evidence at a trial" where review was still ongoing).

A pre-indictment motion for return of legally seized property should generally be denied unless the moving party establishes that they would suffer irreparable harm if the property is not returned. *See Standard Drywall, Inc. v. United States*, 668 F.2d 156, 157 n.2 (2d Cir. 1982); *see also In re Search Warrant Executed Feb. 1, 1995*, 1995 WL 406276, at *2; *Premises Known & Described as 55W. 47 St., Suites 620 & 650, New York, N.Y. v. United States*, 712 F. Supp. 437, 440-41 (S.D.N.Y. 1989); *In re Searches of Semtex Industr. Corp.*, 876 F. Supp. at 431 ("[W]here access to seized records and photocopies are available, there is no irreparable harm." (internal citations omitted)); *but see Roberts v. United States*, 656 F. Supp. 929, 932-33 (S.D.N.Y. 1987) (refusing to read an irreparable harm requirement into the language of Rule 41), *reversed on other grounds*, 852 F.2d 671 (2d Cir. 1988). The SCA does not incorporate Rule 41(g), and therefore a motion for return of property is not available for materials obtained from a service provider pursuant to the Act. *See In re the Matter of the Application of the U.S. for a Search Warrant*, 665 F. Supp. 2d 1210, 1217 (D. Or. 2009) (agreeing that the substantive provisions of Rule 41, including motions for return of property under Rule 41(g) are not adopted by § 2703(a)); *In re Search of Yahoo, Inc.*, No. 07 Misc. 3194 (MB), 2007 WL 1539971, at *6 (D. Ariz. May 21, 2007) (concluding that because "Rule 41(g) and (h) discuss 'Motion[s] to Return Property' and 'Motion[s] to Suppress'" they "do not contain any procedures relevant to issuing a search warrant" and therefore "do not apply to the issuance of a warrant under § 2703(a)").

Finally, an order under Rule 41(g) "is an equitable remedy that is available only when there is no adequate remedy at law and the equities favor the exercise of jurisdiction." *De Almeida v.*

*United States*, 459 F.3d 377, 382 (2d Cir. 2006) (internal citations omitted).  Courts within this Circuit have recognized that the Court's authority to adjudicate return-of-property motions is an "anomalous" form of jurisdiction, *United States v. Padilla*, 151 F.R.D. 232, 234 (W.D.N.Y. 1992), which "is to be exercised with great restraint and caution, since it rests upon the Court's supervisory powers over the actions of federal law enforcement officials," *De Almeida*, 459 F.3d at 382 (quotation marks and citations omitted).

### 2.   Toensing's Return of Property Motion Should Be Denied

Toensing asks this Court to order the Government to return its copy of her cellphone,[10] which was seized pursuant to the 2021 Warrant, as well as its copy of her iCloud and email account, to which the Government understands she already has access, pursuant to the 2019 Warrant.  Her request is contrary to law and would effectively deprive the Government of its right to evidence in the midst of a grand jury investigation so that she, the subject of that investigation, may decide what is privileged and what is responsive in those materials.  Her request should be denied.

Although Toensing does not couch her request in terms of Rule 41, a motion for return of property is cognizable under Rule 41(g) of the Federal Rules of Criminal Procedure.  Though Toensing appears to object to the Government retaining a copy of the data on her cellphone, such retention is entirely permissible in light of the ongoing nature of the investigation and the Government's legitimate interest in using non-privileged materials from that device.  *See Ganias*, 824 F.3d at 215; *Carpenter*, 2015 WL 9461496, at *6-7.  Because Toensing has made this request before any criminal case has been initiated, she must establish irreparable harm from the

---

[10] Toensing's cellphone has already been returned to her and therefore the request for its return is moot.  *See Adeleke v. United States*, 355 F.3d 144, 148 (2d Cir. 2004) ("[T]he United States voluntarily returned the $ 1,000 in cash seized from [the claimant], thereby rendering that part of his claim moot.").

Government's retention of a *copy* of her cellphone. Yet the Government is not presently reviewing that data, but has instead asked that a special master be appointed to do so, meaning that there is no plausible harm from the Government's retention. *See Standard Drywall, Inc.*, 668 F.2d at 157 ("We seriously question whether, in the absence of seizure of some unique property or privileged documents, a party could *ever* establish irreparable harm when the Government either provides the party with copies of the items seized or returns the originals to the party."). The possibility that the Government might use evidence from a device in obtaining an indictment does not constitute irreparable injury. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977) (petitioner's suppression motion was "premature" because irreparable injury did not result solely from the fact that the government conducted a warrantless search and retained the materials); *Matter of Search of Premises Known as 6455 S. Yosemite, Englewood, Colo.*, 897 F.2d 1549, 1556-57 (10th Cir. 1990) (possibility of indictment based on seized evidence does not constitute irreparable harm). And with respect to the data from the 2019 Warrants, the review of that data is largely complete and, in any event, Toensing has not cited any legal authority for the proposition that the Court could order the "return" to her of records obtained under the SCA from third-party internet service providers. Nothing about the Government's warrants deprived her access to her own iCloud or email accounts, and Rule 41(g) and section 2703 do not permit the relief sought here. *See In re the Matter of the Application of the U.S. for a Search Warrant*, 665 F. Supp. 2d at 1217; *In re Search of Yahoo, Inc.*, 2007 WL 1539971, at *6.

Toensing's arguments are premised on the notion that her status as a lawyer acts as a shield against *any* Government search: she argues that the mere fact that the Government has potentially privileged materials in its possession constitutes "gross Government overreach and a violation of the Constitution," requiring the Government to return its own copies of lawfully obtained evidence

to her so that she may conduct her own review and decide what evidence the Government may use.  (Toensing Ltr. at 7).  But it is not the case that because the Government obtained materials pursuant to a judicially-authorized warrant which include potentially privileged materials—even if the Government utilized a filter team to segregate those materials—that the search was illegal. *See United States v. Patel*, No. 16 Cr. 798 (KBF), 2017 WL 3394607, at *6 (S.D.N.Y. Aug. 8, 2017) ("Neither Patel nor the Government has identified any instances where a court authorized blanket suppression or invalidation of a search warrant following seizure of privileged material."). To the contrary, the Second Circuit has explicitly held that searches of law offices—which unquestionably contain privileged materials—are "nevertheless proper" so long as they are "executed with special care to avoid unnecessary intrusion on attorney-client privilege." *National City Trading Corp. v. United States,* 635 F.2d 1020, 1025-26 (2d Cir. 1980) ("[A] criminal enterprise does not exempt itself from a search warrant by conducting its business and keeping its records in its lawyer's office.") (internal quotation and citation omitted); *United States v. Mittelman*, 999 F.2d 440, 445 (9th Cir. 1993) ("Law offices are not immune from search.") (citing, *inter alia*, *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 959 (3d Cir. 1984) (stating that a "search of a law office is not . . . *per se* unreasonable")); *see also Zurcher v. Stanford Daily*, 436 U.S. 547, 554 (1978) ("[V]alid warrants may be issued to search *any* property . . . at which there is probable cause to believe that fruits, instrumentalities, or evidence of a crime will be found." (emphasis added)); *Stewart*, 2002 WL 1300059, at *3 (recognizing that law enforcement may conduct a search of a law office "pursuant to a valid warrant that is supported by probable cause that an attorney has been engaging in criminal activity and that the law offices in question contain evidence of this suspected wrongdoing" (internal citations omitted)).  That is precisely what happened here: the Government executed search warrants, supported by probable cause and

approved by this Court, to seize materials that it then reviewed through the use of a filter team, pursuant to established protocols designed to protect the attorney-client and other applicable privileges.  Toensing cannot establish that simply because she is a lawyer and the Government seized potentially privileged materials—which it took great care to segregate and review accordingly—that the search is *per se* illegal and she is entitled to deprive the Government of access to its copies of materials obtained pursuant to the 2019 and 2021 Warrants.

Toensing cites two out-of-Circuit cases for the proposition that privilege itself requires the return of seized property.  (Toensing Ltr. at 6).  Both cases are inapposite and, in any event, do not stand for the proposition that the attorney-client privilege requires the return of seized property.  *United States v. Rayburn House Off. Bldg., Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 663 (D.C. Cir. 2007) [hereinafter *Rayburn House*], is readily distinguishable.  That case focused on the non-disclosure privilege implicated by the Speech or Debate Clause (which has not been universally recognized by courts), not the attorney-client privilege.  The Speech or Debate Clause "is a creature born of separation of powers concerns," such that its non-disclosure privilege, if it exists, precludes the review of privileged material by *either* the Executive *or* the Judiciary.  *See United States v. Renzi*, 651 F.3d 1012, 1037-38 (9th Cir. 2011).  Such a categorical non-disclosure rule clearly does not apply to the attorney-client privilege, as potentially privileged communications are commonly produced to the Executive and Judicial branches.  Not surprisingly, no court has extended *Rayburn* to this very different context.  Furthermore, the concurring judge in *Rayburn* and other courts have criticized the majority opinion for a variety of reasons, including that its holding creates a class of "supercitizens, immune from criminal responsibility."  *Renzi*, 651 F.3d at 1016 (quoting *United States v. Brewster*, 408 U.S. 501, 516

(1972)); *accord Rayburn*, 497 F.3d at 670 (Henderson, J., concurring); *see also United States v. Collins*, 409 F. Supp. 3d 228, 249-50 (S.D.N.Y. 2019) (limiting *Rayburn* to its unique facts).

Similarly, Toensing cites *United States v. Search of L. Off., Residence, & Storage Unit Alan Brown*, 341 F.3d 404, 406 (5th Cir. 2003), but that case is also inapposite and, in any event, undermines her arguments. In that case, the Fifth Circuit reversed a district court decision that granted a return-of-property motion pursuant to Rule 41 and entirely suppressed the records prior to an indictment being returned based on alleged invalidities in a warrant for an attorney's home and office. The Circuit found that the attorney had not demonstrated the harm necessary to require the return and complete suppression of evidence. *Id.* at 415. Of relevance here, the Court rejected the movant's argument that the Government's alleged violations of the attorney-client privilege or the risk to the movant of being indicted based on a grand jury's reliance on allegedly illegally seized evidence, constituted irreparable harm for the purposes of Rule 41. *Id.* at 414-15.

Finally, Toensing will have both a forum and an opportunity to litigate any privilege issues if there is a criminal proceeding. As the Second Circuit has noted, in affirming the denial of a return-of-property motion, "If [the grand jury's] inquiry results in indictment, the lawfulness of the seizure will be fully considered upon a motion to suppress, and any ruling adverse to the defendant will be reviewable upon appeal from a final judgment; if the grand jury declines to indict the movant, or adjourns without indicting it, its property will most likely be returned, and if not, it can initiate an independent proceeding for its return." *Standard Drywall*, 668 F.2d at 158 (internal citations omitted). Toensing is not, however, entitled to invalidate the Government's searches simply because she is a lawyer and possessed potentially privileged materials. *See, e.g.*, *United States v. Lumiere*, No. 16 Cr. 483 (JSR), 2016 WL 7188149, at *6 (S.D.N.Y. Nov. 29, 2016) ("The general remedy for violation of the attorney-client privilege is to suppress introduction of the

privileged information at trial, not to order wholesale suppression." (internal quotation marks and citation omitted)).  Her motion should be denied.

      3.     <u>There is No Entitlement to Pre-Charge Discovery or a Preview of the Government's Responsiveness Review</u>

Giuliani and Toensing each seek pre-charge discovery of the Government's privilege and responsiveness designations with respect to the 2019 Warrants.  They cite no case in support of this request, and the Government is aware of none.  To the extent they seek pre-charge discovery to consider any motions that may be appropriate to bring with respect to the 2019 Warrants, for the reasons discussed herein, they are not entitled to bring those motions unless and until such time as they become criminal defendants.

As noted above, if there is a criminal proceeding, the Government will produce in discovery the warrant returns, along with the set of documents that were deemed responsive to the warrant, and the warrants' legality and the Government's review can be litigated at that time.[11] *Standard Drywall*, 668 F.2d at 158; *see also Premises Known & Described as 55 W. 47th St.*, 712 F. Supp. at 442 (denying return of property motion and holding that "if DSL's Fourth Amendment claims have any merit, petitioner will have ample opportunity to pursue them at the conclusion of the grand jury investigation").  Permitting Giuliani and Toensing an opportunity to review the Government's privilege and responsiveness determinations when no criminal action has been initiated and tie up the Government in litigation—with the ultimate goal of depriving the grand jury of lawfully-obtained evidence—would permit them to "needlessly obstruct the Government's grand jury investigation of [their own alleged criminal] activities." *Id.* at 442.  As the Second

---

[11] The Government does not typically produce its privilege designations in discovery. Instead, the Government typically produces a copy of a particular defendant's entire account or device, and then produces a copy of the responsive set, which includes only documents designated by its filter team as not potentially privileged.

Circuit has held in denying a return-of-property motion during the pendency of a grand jury investigation, "[t]he Government has a legal right to the evidence at that stage." *Premises Known as 225, 1468 & 1470 Statler Towers, 197 Delaware Ave., Buffalo, N.Y. v. United States*, 787 F.2d 796, 798 (2d Cir. 1986). Since, as discussed more fully below, the only motion Giuliani and Toensing are entitled to make under Rule 41 at this stage is a motion for return of property—and not a pre-charge suppression motion—it follows that if a purpose for which they seek pre-charge discovery is to bring pre-charge suppression motions, then they should not be entitled to discovery in order to enable them to bring such premature motions. *See Search Warrant Executed Feb. 1, 1995*, 1995 WL 406276, at *2 ("The Court is loathe to interfere with an ongoing grand jury investigation and, therefore, is of the view that, unless irreparable injury can be established, petitioner's claims are better resolved in the form of a motion to suppress if and when an indictment is filed.").[12]

Finally, there is no mechanism by which an individual under investigation may compel the Government to pre-produce Rule 16 discovery to him or her, and Giuliani and Toensing cite to none. Accordingly, the Court should deny their motion.

---

[12] Toensing argues that she is entitled to know the Government's responsiveness and privilege designations at this pre-charge juncture so that she may satisfy her ethical obligations in notifying her clients that their information may have been disclosed pursuant to the warrants. (Toensing Ltr. at 9). Yet the Government has already provided Toensing a copy of the relevant warrants, which include the precise date ranges applicable to those warrants. Given that Toensing has access to the same data that the Government obtained pursuant to the warrants and presumably knows which clients she represented and communicated with during those date ranges, she already has the information necessary to make the notice she believes she is required to make to her clients. Finally, not even the authorities Toensing cites indicate that she must know which Government attorney, whether a member of the filter team or investigative team, viewed certain material or whether the Government determined that it was responsive to the warrants, in order to make a disclosure to her clients.

### C.   There is No Legal Basis for Moving for Suppression Before an Indictment is Filed, and Therefore the Possibility of Such a Motion is Not a Basis to Unseal the Affidavits

Giuliani urges the Court to delay the appointment of a special master and unseal the search warrant affidavits so that he may consider the filing of suppression motions, including a motion pursuant to *Franks v. Delaware*, 483 U.S. 154 (1978).  (Giuliani Ltr. at 3, 15).  Such a motion is not available to Giuliani before the initiation of a criminal proceeding.  Rather, pre-charge, his exclusive remedy under Rule 41 is a motion for a return of property; with respect to the 2019 Warrants, under the SCA his remedies are limited to the civil and administrative remedies prescribed by statute, *see* 18 U.S.C. § 2712.

Prior to the 1989 revisions to Federal Rule of Criminal Procedure 41, a motion for return of property was also construed as a motion to exclude evidence at trial.  *See In re 3021 6th Avenue North, Billings, MT*, 237 F.3d 1039, 1041 (9th Cir. 2001).  However, as currently drafted following the revisions, suppression is not an available remedy under Rule 41 prior to indictment.  *See Doane v. United States*, No. 08 Mag. 0017 (HBP), 2009 WL 1619642, at *9 (S.D.N.Y. June 5, 2009) (petitioner's motion to suppress was not "ripe for adjudication" because "[n]o criminal charges have been brought," "it appears premature to address the issue of suppression without knowing how the Government intends to use these documents," and the judge only had power under Rule 41(g)); *In re Search of the Office of Ken Tylman*, 245 F.3d 978, 980 (7th Cir. 2001) ("The rule is directed at the precise situation before us—a seizure prior to the return of an indictment. . . . Rule 41(e), however, cannot be used to suppress evidence."); *In re Matter of Search of Kitty's East*, 905 F.2d 1367, 1370 (10th Cir. 1990) ("By amending the rule to preclude suppression as a de facto result of returning the property, the Court has made every Rule 41(e) motion into one solely for the return of property.  Illegality of a search for purposes of Rule 41(e) and the scope of the

exclusionary rule have been separated by the 1989 amendments." (citations omitted)).  Rule 41(h)
confirms that the suppression remedy is reserved for motions made in criminal cases under Rule
12.  *See* Fed. R. Crim. P. 41(h) (stating that a defendant "may move to suppress evidence in the
court where the trial will occur, as Rule 12 provides").  There is nothing, likewise, in Rule 12 or
within the SCA that permits the filing of a motion to suppress prior to indictment.

Giuliani, therefore, is precluded from moving to suppress the returns from any of the search
warrants in this proceeding.  He has not identified a legal basis for making such a motion at this
stage.  Nor has he identified any facts, other than idle speculation about what was included in
search warrant applications, that would be the basis for a suppression motion, including a *Franks*
motion.[13]  Absent a factual basis for making the motion, or legal authority for making it now, the
possibility of a suppression motion is not a basis to unseal the search warrant applications.

### D.       The Government's Use Of A Filter Team To Review the 2019 Warrants Was Appropriate

Giuliani and Toensing seek the "return" of all copies of the returns for the 2019 Warrants
because, they claim, the Government's use of a filter team failed to adequately protect the attorney-
client privilege, violating their and their clients' constitutional rights, and as such they are entitled

---

[13] While Toensing has not specifically moved to file a suppression motion, Toensing claims
that the warrants were "unclear as to their precise scope" and had  "unrestricted breadth."
(Toensing Ltr. at 2).  But as Toensing well knows because she was provided a copy of the
applicable warrants, the warrants were limited by date range and account, and included a specific
rider that authorized the seizure of materials responsive to particular topics, individuals, and
concepts that constitute evidence of certain specified offenses.  Toensing's claim that the service
providers were "ill-equip[ped] to determine what information was responsive or not"
misunderstands the process.  (*Id.*).  When the Government obtains materials pursuant to the SCA
from service providers, it serves a copy of the warrant on the service provider, who then provides
material in the accounts specified in the warrants.  The Government then conducts its own
responsiveness review to determine which materials are responsive to the rider; in this case, as
noted above, the Government first used a filter team to segregate potentially privileged materials
prior to conducting its responsiveness review.

to convert valid search warrants into subpoenas.  There is no factual basis for those claims and for the reasons set forth above, their request runs afoul of the applicable legal authority.

The use of a government "filter team" is a "common procedure" in this District and considered protective of the attorney-client privilege.  *See United States v. Ceglia*, No. 12 Cr. 876 (VSB), 2015 WL 1499194, at *1 (S.D.N.Y. Mar. 30, 2015); *see also Cohen*, Dkt. 38, at 8 (stating that there was no question that the privilege review conducted by the government's filter team of covert email warrants, including of the then-President's attorney's email account, was "as fair as one done by a special master"); *Patel*, 2017 WL 3394607, at *7 (noting government use of filter review team as evidence of good faith); *United States v. Winters*, No. 06 Cr. 54 (SWK), 2006 WL 2789864, at *2 (S.D.N.Y. Sept. 27, 2006) (proposed use of "'wall Assistant' adequately protects the defendant's asserted privilege").

Consistent with the general practice in this District, and as has been done in numerous other cases, the Government used a filter team to review and exclude potentially privileged communications from email and iCloud accounts belonging to Giuliani and Toensing.  From the start of this investigation, the Government has been attentive to the fact that Giuliani and Toensing are both attorneys, and that Giuliani represented the former President, and therefore special care was required in reviewing materials in their accounts.  Since the scope of the investigation was not yet public when the Government sought the warrants in 2019—and thus notifying Giuliani and Toensing of the warrants would have risked prematurely revealing the investigation and harming the grand jury investigation—the Government reasonably relied on the use of a filter team to ensure that the investigative team did not review potentially privileged materials.  The filter team was composed of Assistant United States Attorneys and FBI special agents who have not worked on this investigation and supervised by senior Assistant United States Attorneys who have not

worked on this investigation.  Contrary to Toensing's baseless assertion that the filter team's process was "haphazard" (Toensing Ltr. at 1), the filter team carefully followed established protocols designed with the assistance of the Department of Justice's Office of Enforcement Operations, pursuant to guidance from the JM, to protect the attorney-client and other applicable privileges in conducting their review.  Pursuant to those protocols, the filter team only released materials that it determined were not potentially privileged.

Despite Giuliani and Toensing's claims to the contrary, there was nothing inappropriate or legally flawed about the Government's use of a filter team in the execution of the 2019 Warrants. (*See* Giuliani Ltr. at 11-13; Toensing Ltr. at 1-4, 7-8).  Nor is there any suggestion that the investigation team gained access to materials relating to another matter involving this very office, and thus there can be no argument that the use of the filter team potentially affected anyone's Sixth Amendment rights.  Moreover, with the exception of a single case discussed below, Giuliani and Toensing fail to cite any cases from this District indicating generally that the use of a filter team is inappropriate, and thus the Government acted entirely reasonably in relying on the weight of authority in this Circuit.

Giuliani and Toensing rely heavily on *Stewart* in support of their arguments against the Government's use of a filter team.  But, as noted, this case is fundamentally different from *Stewart*. Stewart was a criminal defense attorney who represented numerous defendants being prosecuted by the United States Attorney's Office for the Southern District of New York ("USAO-SDNY"). She shared an office with other criminal defense lawyers who similarly represented numerous defendants being prosecuted by the USAO-SDNY.  When agents executed a search warrant on her office, they seized files not just from her own office, but also hard drives and networking hardware from common areas of the office that had been used by other lawyers.  2002 WL 1300059, at *3.

This fact raised significant Sixth Amendment concerns for numerous defendants in pending criminal cases, particularly for those with cases pending before the SDNY.  As a result, there was thus no way for the USAO-SDNY to effectively establish a filter team, because the filter assistants may well have had cases involving the clients (whose names were unknown to the USAO-SDNY) of the other lawyers in the defendant's law suite.   Thus, the filter assistants might have inadvertently been exposed to the privileged files of the very defendants they were prosecuting. 2002 WL 1300059, at *7.  Here, unlike in *Stewart*, the Government is not aware of any cases where either Giuliani or Toensing represented criminal defendants adverse to the USAO-SDNY during the time periods set forth in the warrants, and they have identified none.[14]  As such, the exceptional Constitutional issues raised in *Stewart* are not present here.  Moreover, the searches in *Stewart* were overt, so there was no concern that disclosure of the warrants and appointment of a special master would undermine a covert investigation.

Giuliani's reliance on *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019) is similarly misplaced.  There, the government overtly searched an entire law office for evidence of crimes engaged in by one law partner and his client.  Following the search, the government began reviewing the seized materials through a filter team whose procedures had been approved *ex ante* and *ex parte* by a magistrate judge before the law firm or its clients had the opportunity to inform the government or a court about any objections to such a procedure.  *Id.* at 178-79.  Importantly, while the Fourth Circuit held that the magistrate judge's authorization of the

---

[14] Although Toensing references her representation of a client in an unrelated criminal matter as emblematic of Sixth Amendment constitutional concerns particular to her and her clients (Toensing Ltr. at 3), that case is not pending in the SDNY, and as such, does not implicate the Sixth Amendment concerns referenced in *Stewart*.  No attorney outside of this Office—including any attorney at any other United States Attorney's Office or component of the Department of Justice—has access to any of the search materials.

filter team and its protocols were improper under the circumstances, it did not hold that the government's use of filter teams is *per se* inappropriate.  Of course, the Fourth Circuit's decision is not binding on this Court.  But in any event, here, and by significant contrast, the Government's investigation and the 2019 Warrants were covert, which necessitated the Government's use of a filter team.  The filter team reviewed materials obtained pursuant to the 2019 Warrants according to established protocols, which were intended to protect the attorney-client privilege and any other applicable privilege.  The other cases Giuliani cites do not alter this conclusion.  *See, e.g.*, *United States v. Gallego*, No. 18 Cr. 1537 (RM), 2018 WL 4257967, at *3 (D. Ariz. Sept. 6, 2018) (recognizing that government use of filter teams is "contemplated by the [JM]," and "have been approved and authorized by courts"); *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006) (same in evaluating procedures appropriate for reviewing materials responsive to a subpoena).  In other words, accepting Giuliani and Toensing's argument about the impropriety of using a filter team to review covert search warrant returns would entitle subjects of a criminal investigation to notice of that investigation any time a warrant were executed that related to them, no matter if the investigation were otherwise covert and no matter if the approving Court had signed a non-disclosure order consistent with the law.  Giuliani and Toensing do not cite any case that reaches this exceptional conclusion.[15]

Giuliani also analogizes this case to *Cohen*, suggesting that the Government should have known to use a special master because it had just agreed to use one in that case.  (Giuliani Ltr. at 11).  But *Cohen* favors an opposite conclusion: there, as here, the Government first obtained covert

---

[15] Toensing claims that allowing the 2019 Warrant to "stand" would render the execution of warrants on attorneys and journalists "common instead of extraordinary."  (Toensing Ltr. at 7). Her concern is significantly overblown: the Government must obtain not only Department of Justice's Office of Enforcement Operations approval consistent with the JM to execute search warrants on attorneys, but it must also obtain the approval of a federal judge for the warrant itself.

search warrants for accounts belonging to the subject.  The returns of those covert warrants were reviewed by a filter team—a process which was not challenged.  Although Judge Wood ultimately appointed a special master in *Cohen*, she repeatedly made clear her view that the use of a filter team was acceptable and was consistent with the substantial body of law in this Circuit.  (*See, e.g.*, *Cohen*, Dkt. 38 at 8).  However, based on the unique circumstances of the case—Cohen's principal and perhaps only client was then the President, and the case was subject to significant public attention—Judge Wood believed, and the Government agreed, that the use of a special master was needed for the "perception of fairness, not fairness itself." (*Cohen*, Dkt. 104 at 88).  But even after appointing a special master, Judge Wood continued to recognize the appropriateness of the use of a filter team: at the end of the special master's review, there was one cellphone that had not been decrypted, and Judge Wood ordered that the if the cellphone was ultimately extracted, the privilege review could be conducted by the Government's filter team.  (*Cohen*, Dkt. 103 at 6).  Thus, following *Cohen*, it was entirely appropriate for the Government to use a filter team during the covert phase of its investigation, but in light of the intense public interest in this matter following the overt execution of the 2021 Warrants, the Government agrees that while the appointment of a special master is not necessary for fairness, it is in the interest of ensuring that the privilege review process is perceived as fair.

Even if there was something inappropriate with the Government's use of a filter team previously—and there plainly was not—now is not the appropriate stage for Giuliani or Toensing to seek relief.  As an initial matter, that review is largely complete.  And to the extent the parties are seeking to bring pre-indictment suppression motions based on the Government's disclosed use of a filter team, as discussed *supra* any such motion would be premature and the Court should deny any such effort.

Finally, Toensing requests that the Court order the Government to: "(ii) disclose the procedures its filter team used during its review of that data—including all search terms and limitations; (iii) disclose what information it then shared with the case team; and (iv) disclose what information is left to be shared from that review." (Toensing Ltr. at 4). Toensing fails to identify or cite to any legal basis entitling her to any of this information or material, and the Government is aware of none. As there is no legal basis to order the Government to disclose the procedures and protocols the filter team used in its review, particularly in the pre-charge procedural posture of this matter, the Court should deny these requests in full.[16]

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court grant the Government's motion to appoint a special master, and deny the motions filed by Giuliani and Toensing.

Dated:    May 19, 2021
          New York, New York

                              Respectfully submitted,

                              AUDREY STRAUSS
                              United States Attorney


                     By:      _____/s/_____
                              Rebekah Donaleski
                              Aline R. Flodr
                              Nicolas Roos
                              Assistant United States Attorneys

---

[16] While the Government objects to providing this information to Giuliani or Toensing, the Government invites Giuliani and Toensing's counsel, as it does in every case in which defense attorneys are aware of the Government's investigation or the defendant is otherwise charged, to identify for the filter team any clients or information they view as important to the filter team's consideration of any applicable privileges.