**DAVIDOFF HUTCHER & CITRON LLP**

ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

FIRM OFFICES

WHITE PLAINS
ATTORNEYS AT LAW
120 BLOOMINGDALE ROAD
WHITE PLAINS, NY 10605
(914) 381-7400

WEST PALM BEACH
ATTORNEYS AT LAW
1107 NORTH OLIVE AVENUE
WEST PALM BEACH, FL 33401
(561) 567-8488

FIRM OFFICES

ALBANY
ATTORNEYS AT LAW
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WASHINGTON, D.C.
ATTORNEYS AT LAW
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

WRITER'S DIRECT: (646) 428-3238
E-MAIL: rjc@dhclegal.com

September 10, 2021

<u>VIA EMAIL</u>
The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

**CONFIDENTIAL AND FILED UNDER SEAL**

Re:   <u>In re Search Warrant dated April 21, 2021,  21 Mag. 4335</u>

Dear Judge Oetken:

We submit this reply on behalf of Rudolph Giuliani. In our opening application to this Court, we pointed out that the Government's original position, that they should be entitled to review all of the data following the search for privileged and otherwise protected data, was uninformed as to the enormous size and temporal scope of the data seized from the electronic devices. We hoped that when the Government became aware that meant that they were seeking to review data going back to 1995, that they might change their position.

To the Government's credit, now that they are aware that we are dealing with data from a twenty-six year period, they have adjusted their position. The

931587.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
September 10, 2021
Page 2

Government, in a response directed to both Giuliani and Toensing, has indicated that it would agree/consent:

> "to the Special Master excluding from her review those documents that obviously and entirely predate January 1, 2018. To be clear, the Government is not asking the Special Master to affirmatively conduct any process (electronic or manual) designed to limit the scope of her review. But if in the course of her review the Special Master confidently recognizes a document clearly antedating 2018, the Government does not request that the Special Master screen it for privilege or release it to investigators.
>
> The Government agrees to such relief not because it believes it legally appropriate to delegate responsiveness review to the Special Master, but rather because the Government can essentially conduct its own responsiveness review based on those dates…"

While we agree this new position is far more appropriate than the one the Government previously held, we believe the Government's current position fails to address some relatively minor issues. First, we understand the Government's position to mean that the Special Master should only review data from 2018 and then deliver the non-privileged or otherwise protected data to the Government so that the Government can conduct a responsiveness review. Second, since that material contains data after December 31, 2019, the end date set forth in the search warrants, and up to the actual seizure on April 30, 2021, we are not sure what the

931587.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
September 10, 2021
Page 3

Government's position is with respect to this later portion of the data. We also note that there is no reference at all to the Government's position with respect to Ms. Toensing's dates of data, but we will leave that to her counsel.

The Government's commencement date of January 1, 2018, is six months prior to the commencement date contained in the search warrants. This appears to be an arbitrary date selected by the Government. We believe the commencement date should be the one provided in the search warrants, August 1, 2018.

There are points raised in the Government's letter that require our response. We will address those points in no order of importance.

1. In making what the Government views as a concession on their part, the Government notes that it: "sees no need to impose the cost-in time and money- of having the Special Master review (the period from 1995 to 2018)." While taking that welcomed change of position, the Government gratuitously notes that it:

> "does not consider Giuliani's claim that reviewing (the period from 1995 to 2018) poses an undue financial burden on him. This Court has given Giuliani the opportunity to participate in a privilege review; it has not obligated him to do so. That opportunity is itself extraordinary - most individuals subject to search warrants do not get the chance to play any role in determining what evidence the Government will see. Giuliani cannot reasonably request such an indulgence, and then claim that it must be made less expensive for him to enjoy." (Govt.

931587.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
September 10, 2021
Page 4

Ltr., p.2, fn.2)

The above quoted language is stunning in setting forth the Government's apparent disregard for the following facts. We are dealing here with search warrants executed, not upon an ordinary individual subject to a search warrant, but upon the personal lawyer for the then sitting President of the United States of America. The Constitution is still in effect and it states that Mr. Giuliani is a presumptively innocent citizen and finally that as a lawyer, Mr. Giuliani is ethically required to protect the attorney-client, work product and executive privileges of his clients.[1]

Taking those factors into account, Rudolph Giuliani, as an attorney is required to protect the attorney-client privilege of his clients over the past twenty-six years. The Government's attitude that it does not care if it imposes an enormous financial burden on an innocent lawyer who is obligated to defend the attorney-client privilege of clients from 26 years ago is extremely troubling. Their previously proposed burdensome and oppressive twenty-six year search upon Giuliani would have served to punish him financially and thus impose a penalty upon a presumptively innocent individual following his ethically mandated duty. We are grateful that the Government has reconsidered its position. Under these circumstances, we cannot

---

[1] Rule 1.6 of the New York Rules of Professional Conduct: "A lawyer shall not knowingly reveal confidential information or use such information to the disadvantage of a client."

931587.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
September 10, 2021
Page 5

agree with the Government's position that Mr. Giuliani has been given an indulgence to participate in a privilege review, that is not mandated. To the contrary, because these are search warrants of an attorney's home and office; it is a requirement to have a privilege review and it is required of Giuliani, as an attorney, to participate in that review to protect the attorney-client privileges of his former clients. Participation is neither an indulgence nor a voluntary exercise. It should have been a concern of the Government, that these circumstances would impose a tremendous cost, in terms of time and money, for a presumptively innocent attorney who is required to protect the attorney-client privileges of his clients. The Government should not be in the business of economically punishing individuals whose conduct it is simply investigating. The Government's dismissive phrase: "most individuals subject to search warrants do not get a chance to play any role", is entirely misplaced when we are dealing, as here, with the personal lawyer for the President. We are engaged in this process precisely because it involves a lawyer and it is the only way to effectively protect the attorney-client privileges. Indeed, both the Justice Department Manual and the sparse caselaw dealing with search warrants executed upon lawyers and their offices, make it clear that extraordinary care must be taken to preserve the attorney-client privileges and that the least intrusive means should be

931587.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
September 10, 2021
Page 6

utilized in obtaining evidence. That tact, mandated by the Justice Department Manual, has not been taken here. For two years, we have offered to answer any questions and provide any documents to prove that Rudy Giuliani has done nothing wrong. Instead, we have been subjected to covert and overt search warrants gathering data, certainly including attorney-client privileged data, for a twenty-six year period.

2. Another statement made by the Government needs to be addressed because it demonstrates a fundamental misperception of the roles of the Court and investigators in dealing with the execution of search warrants. The Government claims that in our letter we ask for the Special Master to conduct a responsiveness review and to withhold from Government investigators documents that are in no way privileged, based upon a determination that they fall outside the scope of the warrants. The Government takes the position that: "**Neither the Warrants, nor this Court's order appointing the Special Master, contemplate that an arm of the Court, rather than Government investigators, would conduct such a review.**"

We believe that the Government is not entitled to search twenty-six years' worth of data simply because they seized the devices that contain twenty-six years of data. We believe that the temporal limits set forth in the search warrants actually

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
September 10, 2021
Page 7

mean something. Those temporal limits set forth the boundaries within which the Government must look to see if there are responsive documents. By way of analogy, a search warrant authorizing the search of an apartment does not give the Government the authority to search the entire apartment building. Since the Government selected the dates in the search warrants and presumably provided probable cause for data within those dates, their inquiry should be limited to those dates. Likewise, a Special Master focused on claims of privilege should work within the same temporal boundaries set forth in the search warrants. The statement by the Government quoted above appears to ignore the fact that all power to review private records comes from the Court in the form of a search warrant. It is the Court that decides whether probable cause has been shown. It is the Court that sets the parameters in the search warrants for what may be seized and searched. Just because the Government is authorized to seize items, does not necessarily mean it is entitled to search all of those same items. It is the Court that requires the "particularity" about what may be searched that makes this search warrant into a search that is authorized under the Constitution of the United States and not a general warrant that is prohibited by the Fourth Amendment. The purpose of the particularization is to remove discretion from the Government Investigators to choose whatever they want

931587.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
September 10, 2021
Page 8

to search. In this Court's own decision in *United States v. Zemlyansky*, 945 F.Supp2d 438 (S.D.N.Y. 2013), a case notably not cited by the Government, Your Honor found that temporal limitations, such as we have here, are one of the indicia of "particularity" required by the Constitution. As to which entity determines whether the Court or the Government Investigators make the determinations as to what is responsive and may be reviewed, this Court, citing *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990), stated that "Courts implement the particularity requirement by insisting that warrants not "leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized." *Zemlyansky, supra.* at 453.  It is clearly not the Government Investigators who make the call as to what is responsive, it is the Court, in the warrant, specifying exactly what may and may not be reviewed.  Here, after our initial letter application, the Government has seen the light and narrowed its focus from a twenty-six year search to one that is *almost* aligned with the limits set forth in the search warrants. The Government now seeks the ability to review six months prior to the August 1, 2018 date set forth in the search warrants and has yet to indicate its intentions with respect to the data that post-dates the December 31, 2019 date set forth in the search warrants.

931587.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
September 10, 2021
Page 9

      Our position remains clear and consistent that the Government, having selected the August 1, 2018 to December 31, 2019 dates and presumably having provided this Court with probable cause supporting those dates, should stick to those dates. Thereafter, if after reviewing the data that is turned over to them by the Special Master, the Government has reason to believe that relevant documents exist relating to an alleged FARA violation in 2018 or 2019 that antedate or post-date the dates in the search warrant, the simple solution is to request an additional search warrant; or issue a grand jury subpoena or simply ask us to produce the document. Until that point in time, we urge this Court to direct that the Special Master conduct a privilege review only of the data that falls within the temporal limits of the search warrants, August 1, 2018 to December 31, 2019, and thereafter turn over the non-privileged materials to the Government for its review. The Government said it itself, in its response letter, that we ask that the Special Master not turn over to the Government data "based on a determination that **they fall outside the scope of the Warrants**." (Govt. Response, 9/3/21, p.1).(Emphasis added).

      3.      To justify the Government's position that it is entitled to search beyond the limits set forth in the search warrants, the Government offers some factual theories that simply do not hold up under further examination. On page two of its

931587.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
September 10, 2021
Page 10

letter, the Government offers the following theories for why it should be allowed to examine date before, and presumably after, the temporal dates of the warrants.

The Government states that:

> "a document dated outside the time range *might be modified* or deleted within the range, rendering it potentially unresponsive under the Warrants' plain terms. The opposite *could also be true*: a document is created within the time range, but modified later, and the subsequent modification date is assigned to the file. Or a document's electronic time stamp *could reflect* a date after the time range because that is when the document was last accessed, even though it was created during the time range and concerns the conduct under investigation. And although a technician or vendor *could create* a search based on creation, modification, and deletion date, the Government cannot rely on automated time stamping to identify temporally responsive documents, because such timestamps *can often err*."( Govt. Ltr. P.2) (emphasis added)

The first indication that this as a weak argument is the constant use of conditional terms "might be modified", "could also be true", "could reflect", "could create", and "can often err". The simple answer to this conundrum of possibilities the Government envisions, is to do what we have proposed time and again. Wait until the Government has a chance to actually review the data made available, and then if the Government has probable cause to believe there is additional responsive material, it can seek another search warrant should they continue to chose to do

931587.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
September 10, 2021
Page 11

things in the most difficult way possible; or they can issue a grand jury subpoena or simply ask us for the document. Our expert, Trustpoint has informed us that the Government's paranoia about what could happen or might happen is misplaced. As the attached letter, marked Exhibit A, from Trustpoint indicates, experts establish the dates of the documents in question in a number of ways simultaneously. Using these multiple techniques, you eliminate the dates of a document being last accessed. In its response, the Government incorrectly states that in our opening letter we provided an example of an error involving "last accessed dates" rather than the creation or receipt date. The Government stated that: "[a]ccording to Giuliani's expert consultant, the seized materials include documents dated as late as July 23, 2021." That is an accidental misstatement of our position. What was actually said, both in Exhibit A attached to our original letter and in our letter was that: " the latest data being July 23, 2021". We identified the data, both in Exhibit A and in our original letter, as being "TXT" and "HTML" files. (Giuliani Ltr. 8/27/21, p. 7, fn. 5) Stated plainly, TXT and HTML files are neither emails nor documents.

One final comment regarding the Government's notation that should the Government "rummage" through files that were inappropriate, "Giuliani and Toensing will have the same opportunity as any other defendant to seek

931587.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
September 10, 2021
Page 12

suppression."( Govt. Ltr., p.2). In this statement, the Government once again ignores the fact that we are dealing with lawyers here who undoubtedly have attorney-client privileged documents on their electronic devices. Both Giuliani and Toensing hope and expect, to never be in the role of a defendant with standing to challenge an illegal seizure by the Government, but the point is that once attorney-client documents are invaded by the Government there is no real recourse. That which is seen can no longer be unseen. That is why the attorneys must seek to prevent the invasion of the attorney-client privilege from happening.

      For all the above reasons, the Government's speculation that it might miss responsive documents should be rejected and replaced with the common sense solution of waiting until the Government has actually reviewed the data and then dealing with any additional Government requests based upon their review.

      Respectfully submitted,

      DAVIDOFF HUTCHER & CITRON LLP

      /s/ Robert J. Costello
      Robert J. Costello (RC-8301)
      *Counsel for Rudolph Giuliani*
      605 Third Avenue
      New York , New York 10158
      Tel: (212) 557-7200

931587.v1

DAVIDOFF HUTCHER & CITRON LLP

Hon. J. Paul Oetken
United States District Judge
September 10, 2021
Page 13

                                      AIDALA, BERTUNA &KAMINS, PC
                                      Hon. John M. Leventhal (Ret.)
                                      Michael Jaccarino
                                      *Co-Counsel for Rudolph Giuliani*
                                      545 Fifth Avenue
                                      New York, New York 10036
                                      Tel: (212) 486-0011

cc:  AUSA Rebekah Doneleski
      AUSA Nicolas Roos
      AUSA Aline Flodr

     Michael Bowe, Esq. (Counsel for Victoria Toensing)
     E. Patrick Gillman, Esq. (Counsel for Victoria Toensing)

931587.v1