

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 3, 2021[1]

**BY EMAIL**
The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

Re: *In re Search Warrants dated April 21, 2021, and April 28, 2021*, 21-MC-425 (JPO)

Dear Judge Oetken:

The Government writes in response to the August 27, 2021 letter of Rudolph Giuliani and the August 30, 2021 letter of Victoria Toensing (the "Letters") concerning the temporal scope of the Special Master's review for privileged items within materials seized pursuant to search warrants (the "Warrants") issued by this Court on April 21 and 28, 2021.[2] As set forth below, the Letters seek an improper limitation on the Warrants' execution based on erroneous premises, but the Government proposes a practical limitation for the sake of efficiency that may also moot several issues raised in the Letters.

The Letters conflate the scope of the Special Master's review for privileged material with the scope of the Government's eventual review for material responsive to the Warrants. The Letters present extensive argument concerning only the latter, yet seek relief concerning the former. That is, the Letters contend that the Government's search for responsive materials must conform to certain limits, then leap from that conclusion to request limits on the Special Master's initial screening for privileged items. (*See* Giuliani Let. 4-24 (arguing Government can review only materials dated August 1, 2018 to December 31, 2019); *id.* at 1, 25 (requesting order that Special Master review only materials from the same period)). The Letters thus ask the Special Master to conduct a responsiveness review: To identify and withhold from Government

---

[1] The docketed version of this letter differs from the Government's original September 3, 2021 letter to the Court in that the "Re:" line has been corrected to accurately reflect the docket number and caption.

[2] The Government has filed this response under seal because the Letters were filed under seal, but the Government believes that a minimally redacted copy of this filing, and the Letters, could be publicly filed. Should the Court so order, the Government will confer with Giuliani and Toensing to prepare redacted versions of all three documents for public filing.

September 3, 2021
Page 2

investigators documents that are in no way privileged, based on a determination that they fall outside the scope of the Warrants. Neither the Warrants, nor this Court's order appointing the Special Master, contemplate that an arm of the Court, rather than Government investigators, would conduct such a review. (*See, e.g.*, Dkt. 25 (order appointing Special Master)). The Letters' attempt to limit the materials to which investigators will have access thus appears to be an attempt to re-litigate Giuliani's and Toensing's meritless efforts to limit the search contemplated by the Warrants *ex ante*, which this Court already rejected. (*See* Dkt. 20 at 3-6 (Court rejecting motions for pre-charge (indeed, pre-search) suppression and return of property)).

That is not to say that the Government claims authority to "literally rummage through everything" (Giuliani Let. 9) seized during the Warrants after the Special Master's review concludes. The Warrants must be executed according to their terms. Here, that includes examining materials that do not on their face fall within the Warrants' temporal limitation only "if necessary" to identify materials responsive to the Warrants, meaning, among other things, "sent, received, posted, created, or otherwise accessed, established, modified, or deleted between the time period August 1, 2018 and December 31, 2019." *Cf. United States v. Gatto*, 313 F. Supp. 3d 551, 561 (S.D.N.Y. 2018) (rejecting overbreadth challenge to warrants that allowed the government to search all electronic data in seized cellphones for materials within the scope of the warrant). If the Government exceeds that authority in any of the myriad ways the Letters hypothesize—such as by "rummaging" in areas where it had no reason to suspect responsive materials would be found— and charges result, Giuliani and Toensing will have the same opportunity as any other defendant to seek suppression, as this Court has already made clear. (*See* Dkt. 25 at 5-6).

The Letters contest the premise, embodied in the Warrants this Court issued, that it would ever be "necessary" to review materials that do not bear dates within the prescribed range. (*See, e.g.*, Giuliani Let. 14-15). But such necessity could arise in any number of ways. For example, a document dated outside the time range might be modified or deleted within the range, rendering it potentially responsive under the Warrants' plain terms. The opposite could also be true: a document is created within the time range, but it is modified later, and the subsequent modification date is assigned to the file. Or a document's electronic time stamp could reflect a date after the time range because that is when the document was last accessed, even though it was created during the time range and concerns the conduct under investigation. And although a technician or vendor could create a search based on creation, modification, and deletion date, the Government cannot rely on automated time stamping to identify temporally responsive documents, because such timestamps can often err. *See Gatto*, 313 F. Supp. at 561 (finding that provision in warrants allowing government to search all of the data on the phones was constitutionally permissible because "it was not clear in advance whether the government would be able to sort through the various data categories in some automatic or mechanical way").

Such errors are plainly present here. Giuliani's letter not only acknowledges such potential errors, but contains an example of one: According to Giuliani's expert consultant, the seized materials include documents dated as late as July 23, 2021. (Giuliani Let. Ex. A, at ¶ 4). Given that the Warrants were indisputably executed several months earlier, the July date is obviously wrong, and in fact must pertain to a document created well before the timestamp it bears. Indeed, the Special Master has informed the parties that over 25,000 emails, text messages, chats, and voicemails have timestamps in July 2021. The Special Master has reasonably inferred that this

September 3, 2021
Page 3

reflects a "last modified" date based on when the Government's vendor extracted the data from the searched devices. The Special Master has further confirmed that at least some of these documents were in fact sent or received during the period covered by the Warrants. It is thus entirely reasonable for the Warrants to allow searches that are not limited by a single date affixed to a document, where looking deeper is necessary to ensure all responsive data is found. *See United States v. Ganias*, 824 F.3d 199, 213 (2d Cir. 2016) ("[I]n assessing the reasonableness, for Fourth Amendment purposes, of the search and seizure of digital evidence, we must be attuned to the technological features unique to digital media as a whole and to those relevant in a particular case-features that simply do not exist in the context of paper files.").

That said, the Government may be able to limit the scope of material that it seeks to review, and thus the need for the Special Master to screen that material. The Letters claim that the materials subject to the Special Master's review contain a huge amount of data stretching back years (in Giuliani's case, decades) before the dates prescribed by the Warrants. (*See* Giuliani Let. 7; Toensing Let. 1). It is not clear that the older data in fact represents a significant portion of the seized material: According to a preliminary analysis by the Special Master, there are only approximately 100 emails and chats between 1995 and 2003, and the bulk of the data is dated 2010 and later. But regardless of its quantity, although the Government can think of many examples of responsive documents that would be undated, bear a date after the prescribed period, or bear a date shortly before the prescribed period, it is difficult to imagine a responsive document bearing a date long before the prescribed period. The Government would therefore consent to the Special Master excluding from her review those documents that obviously and entirely predate January 1, 2018. To be clear, the Government is not asking the Special Master to affirmatively conduct any process (electronic or manual) designed to limit the scope of her review. But if in the course of her review, the Special Master confidently recognizes a document clearly antedating 2018, the Government does not request that the Special Master screen it for privilege or release it to investigators.

The Government agrees to such relief not because it believes it legally appropriate to delegate responsiveness review to the Special Master, but rather because the Government can essentially conduct its own responsiveness review based on those dates: Just as FBI agents executing a physical search for documents in the prescribed time range would not comb through a file cabinet that appeared to contain only documents from 2013, the Government does not need to electronically review documents that obviously hale from well before the relevant time. And because the Government does not now believe it would need to review such documents further for responsiveness, the Government sees no need to impose the cost—in time and money—of having the Special Master review them first.[3] Avoiding such documents would also appear to exclude the portions of the seized material that Giuliani claims raise concerns beyond the Warrants' temporal limitations, such as reviewing documents from his time at Bracewell & Giuliani.

---

[3] In suggesting this course, the Government does not consider Giuliani's claim that reviewing all the documents poses an undue financial burden on him. (*See* Giuliani Let. 2). This Court has given Giuliani the opportunity to participate in the privilege review; it has not obligated him to do so. (*See* Dkt. 25). That opportunity is itself extraordinary—most individuals subject to search warrants do not get a chance to play any role in determining what evidence the Government will see. Giuliani cannot reasonably request such an indulgence, and then claim that it must be made less expensive for him to enjoy.

September 3, 2021
Page 4

      This Court should not, however, grant the Letters' requests to destroy or return any data at this time.  The Court has already rejected motions for exactly that relief.  (*See* Dkt. 20 at 3-6). Moreover, the Government is entitled to retain a complete copy of the seized data, so that it can authenticate any portion of the data ultimately offered in evidence.  *See Ganias*, 824 F.3d at 215. Data that clearly predates January 1, 2018 should thus simply be put aside, and not reviewed by the Special Master or the Government.  It may be that the Government's eventual review of the materials post-dating January 1, 2018 reveals reason to believe that some of the segregated material is in fact responsive.  If that is so, then the Government would have reason to search it—just as an FBI agent might return to that 2013 filing cabinet if his search of other files revealed that documents in the searched office were often filed under the wrong dates.  At that point, the Government could then request the privilege review which it is now willing to forego for efficiency's sake.

                                                                              Respectfully submitted,

                                                                              AUDREY STRAUSS
                                                                              United States Attorney for the
                                                                              Southern District of New York

                                                      By:     /s/                         
                                                                              Aline R. Flodr
                                                                              Nicolas Roos
                                                                              Hagan Scotten
                                                                              Assistant United States Attorneys
                                                                              (212) 637-2423

Cc: Robert Costello, Esq. / Barry Kamins, Esq. / John M. Leventhal, Esq. / Arthur Aidala, Esq.
    (counsel for Rudolph Giuliani)
    Michael Bowe, Esq./ E. Patrick Gilman, Esq. (counsel for Victoria Toensing)