

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 14, 2021[1]

**BY EMAIL**
The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

     Re:    *In re Search Warrants dated April 21, 2021, and April 28, 2021*, 21-MC-425 (JPO)

Dear Judge Oetken:

    The Government respectfully submits this brief reply to the September 13, 2021 letter of Victoria Toensing (the "Letter"), addressing the scope of a warrant (the "Warrant") this Court issued for the search on her iPhone. Because some of the Letter's claims are as surprising in substance as they are in tone, the Government believes three points may be helpful to the Court:

    *First*, Toensing argues that the Government "badly bungled the data collection process," resulting in the inaccurate metadata identified by Rudolph Giuliani and the Special Master. (Letter 1, 3-4). The Government cannot address this factual claim, because the Government currently does not have access to the data and was not involved in its more recent handling.[2] But in any event, nothing turns on it: Toensing cites no authority for the proposition that technical errors in the execution of a search—if any errors occurred, and if those errors were the Government's— would somehow affect the scope of a warrant. Her sole citation on this issue is to a case concerning the Speedy Trial Act, where the Government's diligence in producing electronic discovery was at issue. *See United States v. Morgan*, 493 F. Supp. 3d 171, 200 (W.D.N.Y. 2020). And to the extent the manner in which the metadata was collected has some relevance here, the correct time to litigate that issue would be after the search is complete, as this Court has already held. (*See* Dkt. 25 at 5-6).

    *Second*, the Letter cites several cases to argue that that the Special Master must make "a determination regarding the relevance of files under the temporal limitations imposed by the

---

[1]    The docketed version of this letter differs from the Government's original September 14, 2021 letter to the Court in that the "Re:" line has been corrected to accurately reflect the docket number and caption.

[2]    The Government made Toensing's counsel aware of this fact during a September 3, 2021 conversation about this issue. At that time, Toensing did not request any further information from the Government, and acknowledged that the Government likely had no involvement in, or understanding of, the apparent dating errors. That makes the Letter's new request that the Government provide "a complete and candid account of what happened to the seized files" a particularly transparent attempt at further delaying this process.

September 14, 2021
Page 2

Warrant." (Letter 2-3).  None of the cited cases support that proposition.  To start, the Letter does not address the key point:  The Warrant authorizes the Government to make that determination based on a review of all the seized data, if necessary; that authorization is squarely sanctioned by binding circuit precedent; and to the extent there is fault in either the Warrant or its execution, that contention is appropriately addressed in a suppression motion after the search is complete.  (Gov't Sept. 3, 2021 Letter, at 2-3).  The Letter instead relies on one case in which a Magistrate Judge required additional detail in a warrant before it was issued, and others examining suppression motions after a warrant was executed and charges resulted.[3]  The Letter's citations thus do not support its creative proposal for an *in media res* review of the Warrant's execution.

*Third*, the Government's willingness to forego review of data plainly predating 2018 is neither arbitrary nor capricious.  It is admittedly approximate, but that is the nature of executing any search warrant:  Investigators must use some judgment to determine where they are most likely to find items responsive to the warrant.  *See generally Dalia v. United States*, 441 U.S. 238, 257–58 (1979) ("[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant—subject of course to the general Fourth Amendment protection against unreasonable searches and seizures.").  Here, the Government does not believe it is likely to find responsive material in any document that obviously predates the first year of the conduct under investigation.  Because the Government would not search such material, there is no need for the Special Master to screen it, or for this Court to resolve disputes related to it.  Bringing that to the Court's attention as a matter of efficiency does not give Toensing any right to demand greater precision in the Government's plan to search materials to which it does not currently even have access.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney for the
Southern District of New York

By: _____/s/_____
Aline R. Flodr
Nicolas Roos
Hagan Scotten
Assistant United States Attorneys
(212) 637-2423

Cc: Robert Costello, Esq. / Barry Kamins, Esq. / John M. Leventhal, Esq. / Arthur Aidala, Esq.
Michael Bowe, Esq./ E. Patrick Gilman, Esq.

---

[3]    *See, e.g.*, *Matter of the Search of Apple iPhone, IMEI 013888003738427*, 31 F. Supp. 3d 159, 168 (D.D.C. 2014) (requiring additional details on intended search methods before authorizing warrant); *United States v. Evaschuck*, 65 F. Supp. 2d 1360, 1365 (M.D. Fla. 1999) (granting suppression where Government failed to adhere to warrant's limitations); *In re 650 Fifth Ave. & Related Properties*, 934 F.3d 147, 163 (2d Cir. 2019) (granting suppression where warrant lacked particularity); *United States v. Hanna*, 661 F.3d 271, 286 (6th Cir. 2011) (declining to suppress where warrant was appropriately tailored and Government adhered to it).