UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of Search Warrants
Executed on April 28, 2021

21-MC-425 (JPO)

ORDER

J. PAUL OETKEN, District Judge:

The Court has received the attached letter from the New York Times Company requesting that certain materials be unsealed. The parties shall file any response to this letter by October 23, 2023.

SO ORDERED.

Dated: October 2, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge



The New York Times Company

David E. McCraw
Senior Vice President
& Deputy General
Counsel

T 212 556 4031
mccraw@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

September 22, 2023

**VIA FEDERAL EXPRESS**

The Honorable J. Paul Oetken
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

Re:  <u>In re Search Warrants Executed on April 28, 2021</u>, 21-mc-425-JPO

Dear Judge Oetken:

The New York Times Company ("The Times") respectfully submits this letter to seek an order unsealing materials related to searches conducted in the above-referenced matter. Specifically, The Times requests that the court unseal copies of the search warrants, search warrant applications, supporting affidavits, court orders, and returns on executed warrants related to the search of the premises and seizure and search of electronic devices belonging to Rudolph Giuliani and Giuliani Partners LLC, executed on April 28, 2021 ("the Records"). The search warrants at issue are docketed as No. 21 Mag. 4335.

We make this request pursuant to the public's right of access to judicial records, grounded in both the federal common law and the First Amendment. If Your Honor prefers, we are prepared to move by formal motion to intervene and seek the unsealing.

1

The First Amendment and common law rights of access to judicial records and proceedings are well-settled, based in our longstanding national commitment to democratic governance. "The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie County*, 763 F.3d 235, 238-39 (2d Cir. 2014). "[P]ublic monitoring of the judicial system fosters important values of 'quality, honesty, and respect for our legal system.'" *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 9-10 (1st Cir. 1998) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 407 (1st Cir. 1987)). *See also Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 606 (1982).

The Government states that it reserves the right to oppose the unsealing, in full or in part, pending review of this motion. Mr. Giuliani, who is now *pro se* in this matter, consents to the unsealing of the affidavit in support of the warrant for his apartment, office, and iCloud account.[1]

1. The Common Law Right of Access Requires Unsealing

In determining whether the presumptive common law right of access attaches to particular documents, "court[s] must first conclude that the documents at issue are indeed 'judicial documents'" subject to the common law right of access, then "determine the weight of that presumption" of access, and finally "balance [any] competing considerations against it." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)). That analysis is the same in criminal cases, including for media intervenors. *See Gannett Media Corp. v. United States*, No. 22-2160, 2022 WL 17818626, at *2-3 (2d Cir. 2022) (finding justifications for redactions of court filings insufficient under common law presumption of access).

The Second Circuit and other federal appellate courts have held that the common law public right of access applies to search warrant materials, particularly in concluded matters. *See, e.g., In re Application of Newsday,*

---

[1] The Times obtained Mr. Giuliani's consent via communications with his former counsel in this matter.

*Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (affirming unsealing search warrant affidavit in concluded case based on common law right of access); *United States v. Sealed Search Warrants*, 868 F.3d 385, 396 (5th Cir. 2017); *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194 (9th Cir. 2011).

The presumption of access to warrant materials in concluded cases is entitled to significant weight, as courts within this Circuit have explained. Such materials "go to the heart of the judicial function": they inform the court's decision to grant a search warrant, which in turn affects individuals' constitutional rights. *In re Search Warrant*, No. 16-mc-00464, 2016 WL 7339113, at *3 (S.D.N.Y. Dec. 19, 2016); *see also United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 583-84 (S.D.N.Y. 2009); *In re Sealed Search Warrants Issued June 4 & 5, 2008*, No. 08-M-208, 2008 WL 5667021, at *3 (N.D.N.Y. July 14, 2008) (documents filed in connection with a search warrant "adjudicated the right of individuals under the Fourth Amendment not to be subjected to government intrusion absent a judicial determination of sufficient cause," a right "held among this country's highest values"). The result is that the presumption of access to search warrant materials carries "the maximum possible weight." *In re Sealed Search Warrants Issued June 4 & 5, 2008*, 2008 WL 5667021, at *3.

In this case, in particular, the public has a particularly strong interest in transparency regarding a grand jury investigation into a key counselor to former President Donald Trump. Mr. Giuliani, long a noteworthy public figure, was recently indicted for his role in Mr. Trump's efforts to overturn the results of the 2020 elections.[2] Mr. Giuliani's prominence as a former presidential advisor and confidante, particularly one now accused of wrongdoing, gives inherent public importance to any investigations surrounding him. In an investigation centered on such a powerful figure, transparency and democratic oversight are essential, whether to ensure that

---

[2] Stephen Fowler, *Donald Trump Is Indicted in Georgia for Seeking to Overturn the 2020 Election*, NPR (Aug. 15, 2023), www.npr.org/2023/08/14/1152841080/trump-fulton-county-georgia-election-investigation-indictments.

powerful people are held to the same standards as others or to safeguard against the misuse of governmental powers for political ends.
Given this strong presumption for common law access, the Records must be released unless countervailing interests require withholding. *Lugosch*, 435 F.3d at 120. Countervailing interests that may overcome the presumption of access include "the danger of impairing law enforcement or judicial efficiency" or "the privacy interests of those resisting disclosure." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016).

Here, "the danger of impairing law enforcement or judicial efficiency" is nonexistent: the grand jury investigation that led to the issuing of the warrants has concluded without criminal charges,[3] eliminating any risk of tipping off defendants, impeding investigations, or influencing ongoing proceedings. *See In re Application of Newsday, Inc.*, 895 F.2d at 79 (affirming release of search warrant affidavit where "warrant ha[d] been executed" and proceeding concluded, leading even "the government [to] admit[] that its need for secrecy [was] over").

In deference to the legitimate privacy interests of third parties, The Times is not seeking the names of unindicted parties other than Mr. Giuliani and his company and former President Trump, nor is it seeking details on the uncharged conduct of those third parties. *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (highlighting privacy interests of "innocent third parties"). Mr. Giuliani's consent to the unsealing of the affidavit in support of the warrant for his apartment, office, and iCloud account has effectively waived his privacy interests. Mr. Giuliani's name and uncharged conduct should therefore not be redacted from the search warrant materials.

In any event, Mr. Giuliani is no mere "innocent third part[y]" in these events, though he was not charged in the course of this investigation. Rather, he was the target of the investigation, a fact already public from

---

[3] Letter Addressed to Judge J. Paul Oetken from AUSAs Donaleski, Flodr, Roos, Scotten Dated Nov. 14, 2022 Re: Termination of Special Master Appointment, ECF No. 51.

4

available court records.[4] Mr. Giuliani's prominent role in the Ukraine coercion affair that led to former President Trump's first impeachment was also well-documented, including through the impeachment inquiry itself.[5] We believe there is likely significant overlap between the long-public revelations about Mr. Giuliani's role in that incident, and the information contained in the Records at issue. Given the robust reporting around Mr. Giulian's conduct, the disclosure of the Records would have minimal additional impact on his privacy interests. Disclosure of uncharged conduct is harmful primarily when it has never been revealed or when the potential to prejudice the proceedings against a defendant, interests that are inapposite in this closed investigation. *United States v. Leonardo*, 129 F. Supp. 2d 240, 244-47 (W.D.N.Y. 2001), aff'd, *United States v. Graham*, 257 F.3d 143 (2d Cir. 2001).

In this way, Mr. Giuliani's privacy interests do not outweigh the strong presumption of access, in particular given his status as a long-time public figure, his voluntary participation in public life, and the extensive reporting on him elsewhere. *See Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 170 (S.D.N.Y. 2018) (generalized privacy interests insufficient to overcome First Amendment right of access). Moreover, to the extent these impairment or privacy interests are implicated, targeted redaction, rather than wholesale closure, is the appropriate remedy. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).

For the same reasons, to the extent Mr. Trump is identified in the Records or there are accounts of Mr. Trump's uncharged conduct, that identity and those accounts should be unsealed. No legitimate privacy interest remains for Mr. Trump in light of the extensive disclosures of his conduct in respect to Ukraine that were made in the impeachment proceedings.

---

[4] Miscellaneous Case Initiating Document - Redacted Letter Dated April 29, 2021, ECF No. 1.
[5] *See, e.g.*, Steve Inskeep, *Giuliani: The Lawyer At The Center Of The Ukraine Affair, And The Path That Led There*, NPR (Dec. 13, 2019), https://www.npr.org/2019/12/13/787204619/giuliani-the-lawyer-at-the-center-of-the-ukraine-affair-and-the-path-that-led-th ("Congressional testimony has placed Giuliani at the center of the Ukraine affair, with multiple witnesses telling House investigators that he helped spearhead an irregular diplomatic channel between the U.S. and Ukraine.").

2.  The First Amendment Requires Unsealing

The Records also are subject to a First Amendment right of access, which provides a separate and independent basis for access. To determine whether the qualified First Amendment right of access attaches, courts first determine whether the materials at issue are judicial documents. *Bernstein*, 814 F.3d at 141. Courts then examine whether the First Amendment right attaches based on the Supreme Court's experience and logic analysis. The experience prong looks to whether the records and processes at issue "have historically been open to the press and general public" and the logic prong examines "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Super. Ct. of Calif. (Press-Enterprise II)*, 478 U.S. 1, 8 (1986).

Where the First Amendment right of access attaches, the proceedings and records cannot be kept from the public "unless specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at 13-14 (quoting *Press-Enter. Co. v. Super. Ct. of Calif. (Press-Enterprise I)*, 464 U.S. 501, 510 (1984)). The Second Circuit's "precedents establish[] the public's and the press's qualified First Amendment right . . . to access certain judicial documents." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004). That right attaches to a large array of judicial records and gives the public a constitutional right to inspect those records, absent a showing of an overriding public interest that justifies sealing. *See, e.g., Lugosch*, 435 F.3d at 124 (common law and constitutional right to judicial documents in civil case); *United States v. Suarez*, 880 F.2d 626, 630-31 (2d Cir. 1989) (First Amendment right to documents in a criminal case).

Though the Second Circuit has not yet considered the issue, a number of courts have more specifically concluded that a First Amendment right of access attaches specifically to search warrant materials. *See, e.g., In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988); *In re Application of The New York Times Co. for*

6

*Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 94 (D.D.C. 2008); *United States v. Loughner*, 769 F. Supp. 2d 1188, 1193 (D. Ariz. 2011).

For the same reasons set forth above with respect to the common law right, the First Amendment right of access to the Records is not overcome by any countervailing interest. Where the First Amendment applies, sealing can be sustained only if the demanding *Press-Enterprise* standard is met. *Press-Enterprise I*, 464 U.S. at 510. That is a heavier burden than the one imposed by the common law. *Lugosch*, 435 F.3d at 126.

For all of the foregoing reasons, The Times respectfully requests that the Records be made public. Should any party object to unsealing, The Times requests an opportunity to reply and otherwise be heard. If this docket is the inappropriate forum for this request, we kindly ask that it be redirected to the appropriate chambers.

We thank the Court for its consideration of this matter.

Respectfully submitted,

*/s/ David E. McCraw*

David E. McCraw

cc:     Counsel of Record for the Government (by email)
        Mr. Rudolph Giuliani (by Federal Express)